McCALEB, Justice.
 

 This is a suit by a husband against his wife for an accounting and settlement of
 
 *83
 
 the community of acquets and gains which was dissolved by a decree of separation from bed and board on May 15, 1953. The trial court, after hearing evidence in support of the respective claims of the parties, awarded judgment in favor of plaintiff for $1,011.46 and dismissed defendant’s reconventional demand. Plaintiff is appealing from the judgment and defendant has answered, reiterating the claims urged by her below.
 

 Plaintiff is the second husband of defendant. She was first married to John W. Schroeder, who died on July 17, 1945, being survived by defendant and a son, Curtis J. Schroeder, issue of the marriage and of age. Mr. Schroeder’s succession, consisting entirely of community property, was opened in the Civil District Court and defendant, as surviving spouse in community, was placed in possession of an undivided one-half interest of all of the property and was recognized as usufructuary of the remaining one-half. The son, Curtis J. Schroeder, was recognized as the sole heir of his father and was placed- in possession of an undivided one-half interest, subject to his mother’s usufruct. Included in the assets of the - succession was a going concern, known as “Helshro Furniture and Appliance Company” (hereinafter referred to as Helshro), an unincorporated mercantile business conducted by defendant and her late husband. Following his death, defendant continued to operate the business in the same manner as formerly, she being the general manager, credit manager, cashier and chief saleswoman of the enterprise. Her son was attending college during most of this period and has since become a professor at Louisiana State University.
 

 Plaintiff and defendant were married on March 16, 1946 and lived together about seven years. On May 15, 1953, a judgment of separation from bed and board was rendered in favor of plaintiff which reserved the rights of both parties to all claims for community and separate property. During the existence of the community, defendant continued to operate Helshro for herself and her son.
 
 [1]
 
 The business prospered in these years. At the time of her marriage to plaintiff, defendant’s share of the capital and undivided profits was valued at $15,-954.53, while, at the dissolution of the community, the figure had increased to $46,-824.47.
 

 The principal issue in the case involves the increase or amelioration of defendant’s share in the Helshro business during the marriage, plaintiff’s claim being that this increase, amounting to $30,869.94, inured to the community and that he is entitled to one-half of it, or $15,434.97. This contention is predicated to some extent on Article 2386 of the Civil Code but largely on Article 2408.
 

 
 *85
 
 We have no difficulty whatever in resolving that Article 2386 of the Code,
 
 [2]
 
 as amended by Act 286 of 1944, is without pertinence to this phase of the case. The increase of the value of defendant’s interest in Helshro is not a fruit of her paraphernal property within the meaning of the law. See Daigre v. Daigre, 228 La. 682, 83 So. 2d 900 and authorities there cited.
 

 We therefore pass on to a consideration of the applicability of Article 2408 of the Civil Code to the case. It provides:
 

 “When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations
 
 be the result of the common labor, expenses or industry;
 
 but there shall be no reward due, if it be proved that the increase is due
 
 only
 
 to the ordinary course of things, to the rise in the value of property, or to the chances of trade.” (Italics ours.)
 

 Counsel for defendant proclaim that this Article is irrelevant to the increase in the value of defendant’s interest in Helshro for three reasons: first, because plaintiff had nothing whatever to do with the increase; second, because the increase resulted from the ordinary course of things, from the rise in value of the property or from the chances of trade, and third, that, inasmuch as Helshro is a commercial partnership, the increase in its value cannot be claimed for the community.
 

 Considerable evidence was adduced below on the first proposition as to whether plaintiff rendered services having causal relation to the increase in capital and undivided profits of the enterprise. Plaintiff testified at length respecting his employment at the store as a salesman of appliances, a solicitor and a buyer (all without salary). His statement is corroborated by some witnesses but denied by others. The judge resolved this conflict against plaintiff, holding that plaintiff’s connection with the business was “very vague and indefinite, and not very consequential”. By giving due weight to this finding, we will assume that plaintiff made no positive contribution to the enhancement in value of Helshro during the existence of the community. But this circumstance alone does not render Article 2408 inappropriate to the case for the reason that “the common labor, * * * or industry” referred to in the Article does
 
 *87
 
 .not necessarily mean that the reward for the increase will not be given to a spouse who does not individually contribute his labor or industry. The phrase “common labor, * * * or industry” simply connotes
 
 community
 
 labor or industry as the .word “common”, as used in the Civil Code, is synonymous with “community”. See Article 2334, defining separate and common property. Accordingly, it suffices, under .Article 2408, that it be shown that the increase in the separate property has resulted from community labor or industry, that is, the labor of either spouse during the existence of the marriage. It was so decided in Succession of Ferguson, 146 La. 1010, 84 So. 338, where the increase in value of the deceased husband’s interest in a commercial partnership (a drug store) was held to fall to the community despite the fact that the wife contributed no direct part 'in effectuating the increased value.
 
 [3]
 

 In Beals v. Fontenot, 5 Cir., 111 F.2d 956, 960, the question was whether the community was entitled to the increase in value of certain corporate stock brought into the marriage by the husband, it being contended that, since the husband had served as a director and active officer of the corporation until his death, the increase was attributable to his labor and, therefore, became community property under Article 2408 of the Civil Code. The court denied this claim, holding, in accord with the view of the district judge, that, since the community had been adequately compensated by salary and dividends for the husband’s services to the corporation, the increase in the value of the stock could not be attributed to “ ‘the common labor, expenses or industry’ of the community.” Thus, the ruling rested on a determination of fact. Implicit in the decision is the assumption that, had it been shown that the husband’s efforts contributed to the increase in value of his stock, one-half of such increase would have been due the wife under Article 2408.
 

 Hence, it is perceived that, if either husband or wife substantially contribute to the amelioration of the separate property of one of them during the marriage by his or her labor or industry, the spouse who does not own the separate property is entitled to the reward of one-half the value of the increase and it is immaterial whether the enhancement is attributable to his or
 
 *89
 
 her personal effort. The important circumstance is that the contribution must result from community labor, industry or expense.
 
 [4]
 

 Defendant’s contention that the increase of the capital and undivided profits of Helshro is “due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade” is not substantial. It is clear that the growth and success of the business is chiefly due to the efforts of defendant, who has been in sole control of its management over the years, although there can be little doubt that general prosperity and inflationary values have played a prominent part in the accretion. However, this fact does not render Article 2408 of the Code less appropriate for, when it is shown that community labor, expenses or industry has provided an increase to the separate property, the burden shifts to the owner of the separate property to rebut this proof and affirmatively establish that the increase is due
 
 only
 
 to the ordinary course of things, rise in values or chances of trade.
 
 [5]
 

 Finally, assuming that Helshro is a commercial partnership between defendant and her son (although we have some doubts on this score), there is no merit in defendant’s contention that such circumstance precludes the application of Article 2408 of the Code. The legal status of the business has no relevancy whatever; the only inquiry is whether the value of the separate property of a spouse, whether it be in the form of stock or otherwise, has been enhanced by the labor or industry of the community. Succession of Ferguson and Beals v. Fontenot, supra.
 

 We accordingly conclude that plqintiff is entitled to recover from defendant the sum of $15,434.97, or one-half of the amount of the increase in value of defendant’s
 
 *91
 
 share of Helshro during the existence of the community.
 

 The inventory taken at the dissolution of the community exhibits cash balances in various bank and homestead accounts in a total amount of $34,250.20. Some of the accounts were joint accounts between defendant and her son, some were in her name alone and one was in defendant’s name for her son. Plaintiff contends that, of this total, $11,345.72 was acquired by defendant during the existence of the community and is community property. Defendant, on the other hand, asserts that of the total amount only $1,683.10 belongs to the community, this being the partial balance in a checking account plus the amount of rent and interest collected by defendant during the period from March 16, 1946 to January 17, 1950, on which latter date defendant executed an affidavit in accordance with Article 2386 of the Civil Code, the effect of which was to reserve for her own use and benefit the fruits of her paraphernal property from that date until the dissolution of the community. In other words, the contested amount as to these items is $9,662.62 (the amount claimed as community funds by plaintiff less the amount conceded to be,community funds by defendant) .
 

 Starting out with the presumption that the entire sum of- $34,250.20 belongs to the community, in accordance with Article 2405 of the Civil Code, we will examine to what extent defendant has been successful in rebutting this presumption. To do so it will be necessary to inspect each of the aforementioned accounts separately.
 

 An account in the name of Mrs. John W. Schroeder for Curtis Joseph Schroeder in the Union Savings and Loan Association showed a balance of $9,291.31 at the dissolution of the community. This account was originally opened on December 31, 1931, and it was adequately proven that all deposits made therein during the existence of the community were from the son’s own funds. Therefore, none of this balance can be considered a part of the community.
 

 We next consider the joint account in existence at the Treme Market Branch of the National Bank of Commerce, in the names of Mrs. John W. Schroeder or Curtis J. Schroeder. At the dissolution of the community this account showed a balance of $7,493.'66, while at the commencement of the community the figure was $5,-630.04. It appears conclusive from a breakdown of this account that half the account is the property of defendant and half belongs to defendant’s son, Curtis'J. Schroeder. An examination of the account reveals no withdrawals, and the only items deposited during the existence of the community were bond interest, interest on the account and rent. Since it cannot be said that there has been any real commingling of separate and community funds here, we
 
 *93
 
 conclude that the only items in this account that fall into the community are the rents and interest deposited prior to January 17, 1950, the date defendant executed the instrument reserving to herself the fruits of her separate property. This figure, shown to be $794.35, falls into the community. Defendant’s claim that this amount should be offset by certain expenses allegedly applicable to the rents collected is not tenable since no proof was offered to overcome the presumption that such expenses were defrayed by community funds, rather than by defendant’s separate funds.
 

 The next account to be examined, also joint in the names of defendant and her son, is in the Broad Street Branch of the Whitney National Bank. Defendant’s share of the account was $7,512.46 when the community began and was $8,236.02 when the community was dissolved. The only deposits made in this account, other 'than rents and interest, totalled $1,400, all withdrawn from Helshro and charged to Curtis ■ J. Schroeder’s- drawing' account. The only withdrawal was by Curtis J. Schroeder for $2,400. Thus it is clear that there was virtually no commingling in this account by defendant of separate ánd community funds. Accordingly, the only items belonging to the community are the rent and interest deposits made prior to January 17, 1950, or $439.71.
 

 An account in the Union Savings and Loan Association in the name of Mrs. Elvia M. Schroeder- showed a balance at the dissolution of the community of $977.49. An inspection of this account reveals a considerable commingling of separate and community funds, deposits in the amount of $1,645.54 being made from a source described simply as “Other”, in addition to the deposits made of .rents and interest. We conclude that the entire balance is to •be regarded as community property.
 

 A savings account was opened on July 7, 1950, in the Third District Homestead Association in the name of Mrs. Elvia ,M. Schroeder. It showed a balance of $250.52 at the dissolution of the community, all of which must be considered community funds in view of the commingled nature of the account. There were numerous deposits of community funds made in this account, including $530.63 from a source described as “Other” and $2,000 taken from Helshro.
 
 [6]
 

 Also to be considered community property are a $762.47 balance in a checking account in defendant’s name in the Broad Street Branch of the Whitney National Bank and a- $2.71 balance in a savings account at the same bank, both in esse at .the dissolution of the community.
 

 The record discloses that on February 7, 1952, defendant withdrew a total, of $9,000
 
 *95
 
 from the two homestead accounts (i. e., $5,000 from the Union Savings and Loan Ass’n and $4,000 from the Third District Homestead Ass’n) and, on February 8, 1952, made a loan to Mr. and Mrs. Claude A. Brady in the amount of $10,000, secured by a real estate mortgage. Plaintiff contends that this loan was effected from 'community funds and that, since only $550 of the principal had been paid at the time the community was terminated, the value of the note is $9,450 and this amount should be considered a community asset. Defendant, on the other hand, asserts that only $1,000 of the $10,000 was taken from community funds and further claims that at the dissolution of the community only $1,900 was still due on the note, and that therefore the interest of the community in this note is only one-tenth of $1,900, or $190. The trial judge sustained defendant’s view.
 

 We think that the judge erred in holding $9,000 of the loan to have been made with defendant’s separate funds. As we have heretofore observed, separate and community monies were so commingled in the two accounts from which the $9,000 was withdrawn as to necessitate a finding that any withdrawals made from either of these accounts during the existence of the com■munity were from community funds. We therefore hold the entire $10,000 loan to have been made with community funds.
 

 We also believe that the judge erred in finding that all but $1,900 of this loan was paid prior to the dissolution of the community. The mortgage instrument specified monthly payments of $50, and there is no believable evidence to substantiate defendant’s position that $100 per month was paid by Brady, plus a $7,000 payment allegedly made in October of 1952. Brady’s testimony as to how he came by such sums was extremely tenuous.
 
 [7]
 
 In addition, if such amounts were, in fact, paid, surely defendant would have some record of it. Yet the only item offered in evidence to reinforce these claims was a small receipt book indicating the alleged payments. We are impressed neither by this book nor by the testimony and therefore conclude that the note and mortgage represented a community asset in the amount of $9,450, as contended by plaintiff.
 

 We recapitulate our findings in the following table (exclusive of plaintiff’s claim for the one-half interest in the increase of value of defendant’s interest in Helshro).
 

 
 *97
 
 Community assets in esse at dissolution of community.
 

 Fruits from defendant’s separate property prior to Jan. 17, 1950 .................................................. $ 1,234.06
 
 [8]
 

 Union Savings and Loan balance........................... 977.49
 

 Third District Homestead balance.......................... 250.52
 

 Whitney National Bank checking account balance............ 762.47
 

 Whitney National Bank savings account balance.............. 2.71
 

 Brady Mortgage Note..................................... 9,450.00
 

 ' $12,677.25
 

 One-half due plaintiff................ $ 6,338.63
 

 We shall now proceed to examine defendant’s claims as enunciated in her answer to plaintiff’s appeal, all of which were denied by the trial judge.
 

 Defendant’s first claim is for one-half the value of a 1951 DeSoto automobile. Plaintiff admitted the purchase of this automobile in June, 1951, and offered no adequate evidence to rebut the strong presumption that anything purchased during the marriage belongs to the community. We therefore hold this automobile to be a community asset and defendant is entitled to one-half the proceeds from its sale.
 

 The inventory also disclosed a checking account in plaintiff’s name at the Louisiana Savings Bank & Trust Co. having a cash balance at the dissolution of the community in the amount of $1,513.01. This account was opened on July 1, 1946, with a deposit of $9,906.36, this amount having been withdrawn by plaintiff that day from a joint account at the same bank in the names of Mr. or Mrs. Abraham. There can be no serious contention that the balance of $1,513.01 is anything other than community property. Therefore, we hold defendant to be entitled to judgment for one-half the amount of this balance, or $756.50.
 

 Defendant has claimed a one-half interest in certain government bonds allegedly purchased by plaintiff during the marriage. However, proof of the purchase or the identity of the bonds or other circumstances connected with the acquisition is very vague and unsatisfactory. The best that we are able to gather from the indefinite testimony is that plaintiff was the owner of some $10,000 in U. S. government bonds at the time of his marriage to defendant and he maintains that these bonds were still in his possession when the separation took place. While under cross-examination, he admitted that he purchased approximately $3,000 worth of bonds during the marriage but, by
 
 *99
 
 his statement that the only bonds he had in his possession at the dissolution of the community were the bonds he owned prior to the marriage, it necessarily would seem to follow that he is maintaining that he sold during the marriage the $3,000 in bonds he admittedly purchased. Plaintiff offered to produce the bonds in court so that positive identification could be made 'but defendant refused the offer. In view of this refusal, we are constrained to reject defendant’s claim as to the bonds as she has otherwise failed to establish with any degree of certainty that plaintiff had in his possession at the dissolution of the community any specific bonds purchased during the existence of the community.
 

 Defendant finally asserts that she is entitled to judgment for $4,213.99, this being the amount allegedly lent plaintiff by defendant from the latter’s separate funds and never repaid. In considering this claim,, it is necessary to examine the circumstances surrounding the purported loan. On March ' 19, 1946, a joint account was opened in the Louisiana Savings Bank & Trust Co. in the names of Mr. or Mrs. William Abraham, the initial deposits totalling $10,111.31. Defendant maintains that she put up $5,000 of this sum while plaintiff contends that the- entire amount was advanced by him. On May 17, 1946, defendant withdrew $5,-000 from this account. On May 28, 1946, she gave plaintiff a check for $5,050 which he deposited in the joint account on May 31, 1946. On July 1, 1946, plaintiff transferred $9,906.36 from the joint account to his own account in the same bank, which latter account we have already considered. It is defendant’s argument that $4,213.99 of the $5,050 “lent” plaintiff came from her separate funds and has never been repaid.
 

 This claim is without merit. There is nothing to indicate that the $5,050 was a loan rather than a replacement (plus a $50 “fine”, according to plaintiff) for the $5,000 previously withdrawn by defendant from the joint account. There is no evidence of plaintiff’s indebtedness, other than defendant’s testimony, and the entire circumstances of this joint account, both as to its inception and its administration, are far too nebulous to form the basis of any such indebtedness as alleged by defendant.
 

 ' For the reasons assigned, the judgment appealed from in favor of plaintiff on the main demand is amended by increasing the amount thereof to $21,773.60, with legal interest thereon from judicial demand until paid. In all other respects, the judgment is reversed and it is now ordered that there be judgment in favor of defendant and against plaintiff on the reconventional demand for the full sum of $756.50, with legal interest thereon from judicial demand until paid. It is further ordered that defendant-have judgment recognizing her as the owner of an undivided one-half interest in the 1951 DeSoto automobile in possession of plaintiff. All costs incurred in this suit are to be borne equally by the opposing litigants.
 

 [1]
 

 . She claims that, after her first hus- .' band’s death, she waived her rights as usufructuary and that the Helshro business was conducted as a commercial partnership by verbal- agreement between her son and herself.
 

 [2]
 

 . It declares, in part: “The fruits of the paraphernal property of the wife, * * fall into the conjugal partnership,
 
 * *
 
 unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. * * * ”
 

 [3]
 

 . The syllabus written by the Court reads: ‘‘Where a married man, living under the regime of the community, is a partner in a business which was started before his marriage and his interest in which is part of his separate estate, and where, ■during a series of years, a large proportion of the profits of the business have been reinvested in, thereby increasing and enhancing the value of, the capital and stock in trade, the surviving widow in community, claiming in her own right and as the inheritor of her husband’s share in the community property, is entitled to recover from his separate estate to the full extent of such enhancement.”
 

 [4]
 

 . It is well settled that, where community funds are used to improve the separate property of one of the spouses, the other spouse is entitled to recover one-half of the enhanced value of the property resulting from the use of community funds under Article 2408 of the Civil Code. Depas v. Riez, 2 La.Ann. 30; Succession of Boyer, 36 La.Ann. 506; Dillon v. Freville, 129 La. 1005, 57 So. 316; Succession of Goll, 156 La. 910, 101 So. 263; Peters v. Klein, 161 La. 664, 109 So. 349; Succession of Singer, 208 La. 463, 23 So. 2d 184 and Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502.
 

 [5]
 

 . Compare Beals v. Fontenot, 5 Cir., 111 F.2d 956, where, as we have stated, the Court found that the husband did not contribute to the increase in the value of the stock separately owned by him in the corporation because the community was adequately compensated for the services he rendered by the salary paid him and dividends received. It is to be observed that this resolution by-passes the vital question as to whether the community service of the husband contributed to the enhancement in value of the stock. Applicability of Article 2408 of the Civil Code is dependent on this crucial factor and not upon whether the community has been adequately remunerated by the salary and dividends received.
 

 [6]
 

 . It should be noted that the written affidavit executed by defendant on January 17, 1950, in accordance with Article 2386 of the Civil Code, reserved the
 
 fruits
 
 from her separate property but this cannot be held to- include the withdrawn earnings from Helshro, which fall into the community in accordance with
 
 *95
 
 Artiele 2334 of the Civil Code as interpreted by this Court in Houghton v. Hall, 177 La. 237, 148 So. 37 and Succession of Howell, 177 La. 276, 148 So. 48. Also Charles Lob’s Sons v. Karnofsky, 177 La. 229, 148 So. 34.
 

 [7]
 

 . He claims that his father-in-law, who was not produced, lent him the money without interest or written, evidence of indebtedness.
 

 [8]
 

 . Computed from the deposits made in the two non-commingled savings accounts [i. e., Treme Market Branch of the . National Bank of Commerce and the Broad Street Branch of the AVhitney National Bank).