131 So.2d 159 (1961)
Rosalino GIAMANCO
v.
Elizabeth Funderburk GIAMANCO.
No. 262.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1961.
Applications for Rehearing Dismissed June 19, 1961.
*160 Downs & Gremillion, by Field V. Gremillion, Alexandria, John R. Hunter, Jr., Alexandria, for plaintiff-appellant-appellee.
Lloyd G. Teekell, Alexandria, for defendant-appellee-appellant.
Before TATE, FRUGE and SAVOY, JJ.
SAVOY, Judge.
Plaintiff filed suit for a separation against his wife, defendant herein, on the grounds of abandonment. He prayed for the dissolution of the community, asked the court to fix alimony, and asked that the minor child born of the union be given to the wife and allowing him the right to visit said child. Plaintiff then filed a supplemental petition stating that one year had elapsed since he and his wife lived together and prayed for a separation on that ground.
Defendant filed an answer to the suit generally denying all the allegations of plaintiff's petition, and then assuming the position of plaintiff-in-reconvention, alleged certain cruel treatment on the part of plaintiff husband, asked for a separation on that ground, and also prayed that she be granted alimony at the rate of $350 per month and attorney's fees in the sum of $1,000. She prayed further that the community of acquets and gains existing between the parties be dissolved and that she be decreed the owner of an undivided one-half of said community property, and the separate estate *161 of plaintiff be decreed to owe the community the sum of $125,000.
The district court granted plaintiff a judgment of separation on the grounds that the parties had lived separate and apart for one year, allowed defendant $225 per month for alimony for herself and for said minor child, allowed her $1,000 as attorney's fees, and fixed the amount which the separate estate of plaintiff owed to the community of acquets and gains existing between plaintiff and defendant at the sum of $50,006.09.
From the judgment of the district court both plaintiff and defendant appealed to the Supreme Court of Louisiana. The Supreme Court transferred the case to this court under authority of Article 7, Section 30, of the Constitution of the State of Louisiana, LSA.

On Motion to Remand
Plaintiff has filed in this court a motion to remand this case to the trial court for the following reasons:
(1) That prior to the time this case was filed in district court, plaintiff had granted an option to one E. Leroy Chandler, wherein Chandler was granted a lease on the separate property belonging to plaintiff with an option to purchase said property. At the time the trial judge rendered his written opinion, the option had not been exercised. The trial judge pointed out in his opinion that if the option were exercised subsequent to the trial, that it might affect the amount found by him to be owing by the separate estate of plaintiff and his wife, for the reason that the option contained a provision that if Chandler exercised his option and purchased the property, he would be allowed to deduct from the purchase price the amount of lease money paid to plaintiff for the first twelve month period.
Rather than remand the case for the reasons assigned by plaintiff herein, this Court is of the opinion that it would be better practice to reserve to plaintiff and defendant the right to file a separate suit in district court in order to adjudicate their differences because of the sale from plaintiff to Chandler dated July 9, 1960, after the judgment of the district court had been rendered and signed, said suit to be limited to the following subject matter:
(A) Allowing plaintiff to show, if he is able to do so, that the amount of the lease on the property sold July 9, 1960, was applied to reduce the purchase price, as stated in said option dated January 9, 1959, to determine whether there is a credit due by the community property to the separate estate of plaintiff.
(B) To allow defendant to show the value of the improvements placed on the property during the term of the lease by Chandler, in order to determine whether said improvements fall within the community of acquets and gains existing between plaintiff and defendant, or whether the improvements are the separate property of plaintiff.
(C) Reserving the right of defendant to sue for one-half of the value of the movable community property on the premises sold by plaintiff to Chandler on July 9, 1960.
The district judge in his opinion had placed a value of $4990 on the movable effects in the restaurant and tourist courts and deducted this sum which the separate property owed the community and recognized plaintiff and defendant as owners of an undivided one-half interest therein. However, when Chandler exercised his option to buy the restaurant and tourist courts, the movables were transferred to him, and plaintiff then became religated to one-half of the value of the movable community property located in the restaurant and tourist courts at the time of the sale.
(2) Another ground urged by counsel for plaintiff as a reason for remanding this case to the district court is that certain checks, statements and documents attached to the motion to remand, which counsel was *162 unable to secure prior to the trial, all dating no later than the year 1951, are material for the proper adjudication of the matter, and the case should be remanded in order to introduce this additional evidence in the record.
Counsel for plaintiff had approximately nine months to prepare for this suit from the time it was filed in the district court, and the evidence sought to be used in the motion was available at the time of the trial in the district court and is not newly discovered evidence. An examination of the evidence in this case reveals that the items contained in the motion to remand do not indicate that they represent credits due by the community to the separate estate of plaintiff which were not taken in consideration by the trial court.
For the foregoing reasons, the motion to remand is disallowed.

On the Merits
The district judge resolved all the issues presented to him in a well written opinion, and we adopt the following portion of his opinion as our own.
"In this suit plaintiff seeks judgment against his wife decreeing a separation from bed and board. The original petition was on the grounds of abandonment, but in a supplemental and amended petition the petitioner as an additional grounds for his separation alleges that he and the defendant have lived separate and apart since December, 1958, which was more than one year previous to the date of filing the suit.
"The defendant filed an answer denying the abandonment but admitting that they had lived separate and apart since December 10, 1958. Assuming the position of plaintiff in reconvention the defendant prayed for judgment of separation from bed and board, for custody of the minor child, Rosalino Giamanco, Jr., for alimony in the sum of $350.00 per month, for attorney's fees in the sum of $1,000, for recognition of her one-half interest in the community and for recognition of a debt of $125,000 owed by the separate estate of Mr. Giamanco to community of acquets and gains.
"On the trial on the merits, evidence was uncontradicted that plaintiff and defendant have lived separate and apart since December 10, 1958, and plaintiff is therefore entitled to judgment of separation from bed and board on this grounds. The question of who was at fault for the separation was not presented to the Court for determination at this time because this issue will become relevant only in the event of demand for permanent alimony in final divorce proceedings. Mrs. Giamanco is of course entitled to alimony pendente lite after judgment of separation from bed and board.
"Alimony pendente lite has already been fixed by rule at the sum of $225.00 per month and in the opinion of the Court there is no reason for this figure to be changed following judgment of separation from bed and board.
"Plaintiff has not contested the right of defendant to custody of the minor child, Rosalino Giamanco, Jr., and therefore defendant is entitled to judgment in this regard.
"The attorney's fee of $1,000 demanded by the defendant, Mrs. Giamanco, is most reasonable in view of the legal skill, effort and responsibility involved in these proceedings and defendant is therefore entitled to judgment for attorney's fees in this amount.
"There are certain items of movable property which belong to the community of acquets and gains including a 1956 or 1957 Oldsmobile sedan and one Hudson automobile, also certain household furniture and also certain furnishings and fixtures located in the business establishment formerly known as Giamanco's Manna which is now under lease to Mr. Leroy Chandler. As will be noted subsequently in this opinion it was estimated by the expert appraisers *163 that approximately 5% of the value of Giamanco's Manna was represented by movable property such as furniture, furnishings, appliances, etc., but during the trial no effort was made to itemize this property and the exact nature thereof cannot therefore be determined by the Court at this time.
"The most serious issue for determination by the Court is whether the separate estate of Mr. Rosalino Giamanco is indebted to the community of acquets and gains by reason of the fact that community funds were used to construct the buildings and improvements known as Giamanco's Manna on a tract of land which belongs to Mr. Giamanco's separate estate.
"The facts brought out during the trial indicate that plaintiff and defendant were married on March 29, 1948. At the time of his marriage Mr. Giamanco owned a considerable amount of valuable real property in and near the City of Alexandria. This property had been acquired by purchases of different tracts of land by Mr. Giamanco beginning in 1930 and ending in June, 1945. Mr. Giamanco's first wife, Josephine Male, had died previous to 1930 and he did not marry until 1948 when he married the defendant herein. Therefore, all of these properties which were purchased by Mr. Giamanco between 1930 and 1945 became his separate property.
"Beginning in 1947 Mr. Giamanco began to sell off portions of his separate property. According to the deeds which have been filed in evidence, Mr. Giamanco during the period from 1947 down to 1950 made six sales for a total consideration of approximately $26,000. Unfortunately during this period Mr. Giamanco kept no record either of the net amounts which he received from these sales after the mortgages thereon were paid nor did he keep any record of what disposition he made of the proceeds of these sales of his separate property. Actually, Mr. Giamanco did not even have a bank account of which we have any record until January 1, 1950. There is simply no way to determine from the evidence in this case how much net proceeds Mr. Giamanco received from these sales of his separate property from 1947 to 1950, nor is there any record of the disposition of these funds.
"In the year 1950 the plaintiff began the construction of Giamanco's Manna, a restaurant located on property comprising 1.3 acres of land located on MacArthur Drive in Alexandria, Louisiana. The principal issue in this case is whether the buildings and improvements which were placed on this separate property of Mr. Giamanco during the period 1950-1951 and again when more improvements were added in 1955 were paid for with community funds, or with separate funds of Mr. Giamanco derived from sales of his separate property. Before discussing the facts relevant to this issue it is perhaps best that a few of the legal principals involved be stated. One of the most important legal issues is whether the construction of these buildings and improvements during the existence of the marriage creates a presumption that they were erected with community funds even though they were placed on a separate property of Mr. Giamanco. Counsel for the plaintiff has cited the case of Dillon v. Dillon, 35 La.Ann. 92 which interprets Civil Code, Article 2408 as follows:
"`The Article of the Code already quoted very clearly shows that he is only entitled to such benefit if the improvements have been made "by the common labor, expenses or industry."
"`Whether, in the absence of any other proof whatever, the bare fact that the improvements were made during the marriage would be sufficient to establish his right, is a question we are not here called to pass upon. The Article of the Code clearly contemplates proof on both sides; and the presumption from the fact above mentioned, if it exists, is certainly a very light one. We think the evidence in this case, recited above, in absence of *164 all countervailing proof, is sufficient to overcome it.' (Emphasis added.)
"Other cases cited by counsel for Mrs. Giamanco as holding that such a presumption exists are: Hypolite Belair et al. v. Celina Dominguez, 26 La.Ann. 605; Thezan v. Thezan, 28 La.Ann. 442; Denegre v. Denegre, 30 La.Ann. 275; Whiteman v. LeBlanc, 28 La.Ann. 430; Sims v. Billington, 50 La.Ann. 968, 24 So. 637.
"Under the above authorities it is apparently clear that a presumption exists that improvements placed on the separate property of one of the spouses during the marriage were paid for with community funds. I would interpret this to mean that once it has been established that the improvements were actually constructed and that they actually enhanced the value of the separate estate, then this presumption is created. The burden would then shift to the spouse who owns the separate property to prove with reasonable certainty that community funds were not used but on the other hand that his separate funds were used to construct these improvements.
"The second important legal principal involved in this case is that concerning the commingling of community funds and separate funds. In the case of Bruyninckx v. Woodward et al., 217 La. 736, 47 So.2d 478, 482, the Supreme Court held as follows:
"`* * * Counsel maintain that the item of $4971 cash in the Guaranty Bank is separate property because the savings account had been kept by Mr. Bruyninckx before his marriage to plaintiff and they direct our attention to the bank ledger offered in evidence which shows that, prior and immediately subsequent to the marriage, there was $7000 contained in the account.
"`The defect in this argument is that the bank ledger also discloses that, throughout the 19 years of the existence of the community, numerous substantial deposits of funds belonging thereto had been indiscriminately placed in the Guaranty Bank savings account. Accordingly, there was a commingling of monies and it would be utterly impossible to determine what part of the balance now remaining in the savings account is attributable to the separate estate. Succession of Land, 212 La. 103, 31 So.2d 609, relied on by counsel, is clearly distinguishable in that, there, it was found that the community funds deposited in Mrs. Land's commercial account were inconsequential.'
"In the more recent case of Slater v. Culpepper, 233 La. 1071, 99 So.2d 348, the Supreme Court held, however, that where only $1300 of community funds were deposited in an account with over $66,000 of separate funds, the community funds were too inconsequential to establish such a commingling as to constitute a transformation of the separate funds into community funds. Also in the case of Abraham v. Abraham, 230 La. 78, 87 So.2d 735, the Court considered the issue of commingling as to several accounts and followed the principal which was laid down in Slater v. Culpepper to the effect that there must be a considerable and substantial commingling of separate funds with community funds in order to find that a larger amount of separate funds has become so commingled that it must all be treated as community money.
"With these general principals [sic] of law involved, let us now turn to the year 1950 when Mr. Giamanco began construction of Giamanco's Manna. Of course the evidence shows that the improvements were constructed and that the value of the separate property was enhanced and therefore a presumption is created that these improvements were erected with community funds. The next question is whether Mr. Giamanco has sustained his burden of proving that certain monies which he received from the sale of his separate pieces of property went into the construction of these improvements.
*165 "There were two periods during which Giamanco's Manna was constructed. The first period was 1950 and 1951 when the original restaurant was built, and the second period was during the year 1955 when the restaurant building was enlarged and the tourist courts were constructed. The only estimate in the record as to the construction costs of the original restaurant built in 1950 and 1951 is the estimate given by the expert witness Dewey J. Gremillion who was qualified as an expert building contractor. His estimate was that the construction costs of the original restaurant building were $34,500.
"It is the contention of the plaintiff that this entire $34,500 was derived from sales of his separate property. The evidence which plaintiff contends supports this position is the testimony of the plaintiff himself, the certified copies of the deeds showing sales of plaintiff's separate property and the monthly statements of a checking account in the Security National Bank beginning January 1, 1950. It is the contention of the plaintiff that previous to the year 1950 he and his wife had been operating a small restaurant on Johnston Street in the City of Alexandria and that this was the only source of community income. Plaintiff testified that they did not even make enough from the restaurant on Johnston Street to live on and he had previous to 1950 sold off five pieces of his separate property which apparently also went toward the community living expenses. Plaintiff testified that when he started to build Giamanco's Manna in 1950 he had some money in cash, he does not know how much and the record does not reflect the source of this cash. In addition to this cash plaintiff testified that the money which was used to build the original restaurant in 1950-1951 came from a mortgage for the sum of $15,000 which he made on his separate property to the Security National Bank on February 9, 1950, and from five sales of his separate property which he made during the years 1950 and 1951. Plaintiff testified that the net proceeds from these sales were deposited in a bank account in the Security National Bank and were used to pay construction costs. Plaintiff himself acted as his own general contractor for the construction of the original restaurant and he paid his labor, material costs and subcontractors partly in cash and partly by check on the account in the Security National Bank. As the bank statements show this was a joint account in the name of plaintiff and defendant and it apparently was the only bank account which either one of them carried. This checking account was used to pay the family living expense as well as the construction costs of the restaurant building and subsequently the operation of the restaurant and courts.
"The monthly statements of this checking account for the years 1950 and 1951 do corroborate with reasonable certainty plaintiff's position that the net proceeds from the five sales of separate property which he made during the years 1950 and 1951 were deposited in this account. These sales and the deposits shown in the bank account are as follows:
"1. On May 11, 1950, plaintiff sold 6.6 acres on Texas Ave. in the City of Alexandria to the Rapides Parish Police Jury and the City of Alexandria for a consideration of $25,500. The bank statements show a deposit of $21,446.37 on May 12, 1950.
"2. On May 31, 1950, plaintiff sold seven residential lots of Mr. L. G. Hardin for a consideration of $5,600. The bank statements show a deposit of $5,600 on June 5, 1950.
"3. On December 20, 1950, plaintiff sold a house and lot to Mr. J. D. Gourney for a consideration of $5,000 of which $1,000 was paid in cash and the balance was to be paid at $30.00 per month. The bank statements show a deposit of $750.00 on December 21, 1950.
"4. On February 23, 1951, plaintiff sold property to C. H. Ryles for a consideration *166 of $8,050 cash. The bank statements show a deposit of $7,190.65 on February 23, 1951.
"5. On June 15, 1951, plaintiff sold property to Mrs. Alice Dumas for a consideration of $41,000. The bank statements show a deposit of $25,272.63 on June 16, 1951. Other evidence showed that $15,000 of this money was used to pay off the mortgage of February 9, 1950, to Security National Bank and the deposit of $25,272.63 approximates the net proceeds of this sale.
"From the above we see that during the years 1950 and 1951 the plaintiff had actually received and deposited in the bank account from the five sales of his separate property listed above net proceeds totaling $60,265.65. Of course, there is no way to show with absolute certainty by cancelled checks or receipts that these funds were used to pay construction costs. However, when we take into consideration that the total costs of construction were only $34,500, it is most reasonable that at least this amount came from plaintiff's separate money. Under the evidence of this case there is simply no other place where this amount could have been spent by the plaintiff and defendant during this two year period, except for the construction of the original restaurant building.
"The Court realizes full well, and the bank statements indicate, that there was considerable commingling of the proceeds of the five sales listed above in this bank account with other funds in substantial amounts, the source of which is not explained in this record. It must be presumed that these other funds belonged to the community. However, despite this fact it is the opinion of the Court that plaintiff has shown with reasonable certainty under the facts of this case that at least $34,500 of the total of $60,265 in proceeds from sales of plaintiff's separate property was used to construct the original restaurant building.
"During the years 1952 through 1959 the plaintiff sold off five additional pieces of his separate property and it is his contention that the proceeds of these sales went either toward the enlarging of the courts and restaurant in 1955 or toward making monthly payments on the mortgage held by Security National Bank on Giamanco's Manna. Of course, after 1952 plaintiff and defendant operated the restaurant and tourist courts and the proceeds from this operation fell into the community. They still maintained only the one bank account which was used to run the business and was also used by Mr. Giamanco for his separate money. Under these circumstances, the Court does not feel that plaintiff has shown with sufficient legal certainty that the proceeds from sales which he made after 1952 were used to make the monthly payments on the mortgage to Security National Bank. Furthermore, the evidence shows without any question that in 1955 when the restaurant was enlarged and the tourist courts built, the money for this purpose was principally obtained through mortgages to the Security National Bank totaling $50,000 and another mortgage to V. J. Maddie and Buster Giamanco for $10,000, making a total of $60,000. Under the provisions of LSA-Civil Code, Article 2403 all debts contracted during the marriage become community obligations. Therefore these mortgages became community debts and the money secured thereby became community funds. Mr. Dewey J. Gremillion who acted as general contractor for the enlarging of the restaurant and construction of the Courts in 1955 testified that the total building costs were approximately $70,000. The community funds obtained from the described mortgages totaling $60,000 obviously paid almost the entire cost of this new construction.
"On June 25, 1959, plaintiff sold a piece of his separate property to Mr. R. C. Bolton for a consideration of $31,500. The plaintiff testified that from the proceeds of this sale he applied $10,312.91 toward the payment of the community mortgage held by *167 Security National Bank on Giamanco's Manna. Plaintiff's testimony was corroborated by Mr. James Burnett, note teller at the Security National Bank, who testified that on June 27, 1959, a payment in this amount was made on said mortgage. It is therefore the opinion of the Court that the plaintiff has shown with reasonable certainty that this amount of his separate funds was used to pay the said community obligation and he is therefore entitled to credit for this amount.
"Three expert realtors, Mr. Ellington, Mr. Webb and Mr. Bohrer gave opinions as to the value of the naked land on which Giamanco's Manna is located as well as opinions as to the present market value of the buildings and improvements located thereon. Taking the average of these three expert opinions we find that the value of the naked land is $39,866 and that the value of the buildings and improvements is $99,809. The law is clear that when community funds are used to build improvements on the separate property of one of the spouses the community claim against the separate estate is limited to the enhanced value of the property resulting from said improvements as of the date of dissolution of the community. Succession of Rusciana, 232 La. 1073, 96 So.2d 1; Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502; LSA-Civil Code, Article 2408. The three expert realtors testified positively that the value of the naked land itself was not enhanced by reason of the improvements. Therefore, the only enhancement in value is the appraised value of the buildings and improvements which is $99,809.
"The testimony of the expert realtors was that approximately 5% of their estimated value of the buildings and improvements was represented by movable property located in the restaurant and the courts such as furniture, fixtures, appliances, etc. We must therefore subtract from the value of the buildings and improvements 5% thereof for these furnishings, furniture and appliances as these articles, being movable in nature, simply belong to the community in fee. We therefore arrive at the figure $94,819 as the total enhanced value of plaintiff's separate property. As is set forth above the Court is of the opinion that the plaintiff has shown with reasonable certainty that at least the $34,500 used to construct the original restaurant as well as the sum of $10,312.91 paid on the mortgage in 1959 came from his separate funds derived from the sale of his separate property and he must therefore be given credit for this amount. The remaining funds used to construct these improvements are, under the law, presumed to have been community funds. By computation we therefore find that the community is entitled to judgment against the separate estate of the plaintiff for the sum of $50,006.09, this being the amount of enhanced value of plaintiff's separate property due to the use of community funds."
In his written opinion, the trial judge awarded defendant alimony for the wife and the minor child in the sum of $225. Through inadvertence, when the judgment was prepared and signed by the trial judge, defendant was awarded the sum of $250. The judgment of the trial court will be amended so as to conform to the opinion of the trial judge, and the alimony awarded defendant is hereby fixed at the sum of $225.
The right is hereby reserved to plaintiff and defendant to file a separate suit because of the transfer of the separate property by plaintiff to Leroy Chandler on July 9, 1959, after the judgment was rendered and signed in the district court, the suit to be restricted to the subject matter set forth in this opinion.
For the written reasons assigned, the judgment of the trial court is amended so as to reduce the alimony granted to defendant from the sum of $250 to $225, and as *168 amended, is affirmed. Costs of court are to be divided equally between the parties.
Amended and affirmed.

On Applications for Rehearing
En Banc.
PER CURIAM.
Both parties filed applications for rehearing.
Counsel for defendant in his application for rehearing stated that the amount of alimony granted to his client by the district court was the sum of $250 per month instead of $225 per month, as set forth in our original opinion in this case.
In his opinion, the district judge stated that the alimony fixed on the rule nisi of $225 per month would not be changed following the judgment of separation from bed and board. At the time the original opinion was written, the judgment for alimony pendente lite was not in the record of this suit. The record has now been completed to include the judgment of the district court, and the amount of alimony granted to defendant wife was fixed at the sum of $250 by that judgment.
Following the applications for rehearing, counsel for both plaintiff and defendant admitted that the proper amount of alimony to be awarded to the wife and her minor child is the sum of $250. Both parties request that, with an amendment of our original decree to such effect, their applications for rehearing be dismissed.
For these reasons, the judgment of the district court of June 30, 1960, is reinstated, and judgment is accordingly granted to defendant wife for the support of herself and her minor child in the sum of $250 per month.
As amended, our original decree is reinstated, and the applications for rehearing are dismissed.