JERRY L. FINLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Finley v. Commissioner
Docket No. 847-81.
United States Tax Court
T.C. Memo 1982-411; 1982 Tax Ct. Memo LEXIS 333; 44 T.C.M. (CCH) 540; T.C.M. (RIA) 82411; July 21, 1982. Jerry L. Finley, pro se. Robert M. Ratchford, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1978 in the amount of $3,310.35. During 1978 petitioner and his wife, Opal J. Finley, resided in Louisiana, a community property state. They were separated at various times during the year and petitioner filed a separate income tax return. The following issues are presented for decision: (1) Whether petitioner must pay minimum tax on the section 1202[1] deduction *335 claimed with respect to long-term capital gains realized on the sale of his separate real estate. [1]
(2) Whether he is entitled to deduct more than one-half of certain depreciation and charitable contribution deductions and investment tax credits on the ground that the assets purchased or contributed were paid for out of his separate funds. (3) Whether he is entitled to a $250 deduction for the cost of a property appraisal allegedly made in connection with the sale of certain real estate. (4) Whether he may claim a deduction under section 162 for legal fees in the amount of $10,552. (5) Whether respondent's alleged failure to provide petitioner with an administrative appeal prior to the issuance of the notice of deficiency constituted a denial of due process of law. To facilitate the disposition of these issues we have combined our findings of fact and opinion. Some of the facts have been stipulated and are so found. At the time he filed his petition in this case petitioner resided in Denham Springs, Louisiana. He *336 timely filed a separate individual income tax return for 1978 with the Internal Revenue Service Center in Austin, Texas. Issue 1. Liability for Minimum Tax
On July 16, 1976 petitioner married his present wife, Opal J. Finley, and was married to her throughout 1978. However, at various times during the year they were separated and living apart, although they remained domiciliaries of Louisiana. In his 1978 income tax return petitioner listed his filing status as "married filing separately." His wife did not file an income tax return for that year. On June 21, 1971, petitioner inherited certain real estate from his father. He sold the property in three separate transactions on September 18, September 27, and December 5, 1978, respectively, for a total of $76,600. At all times the property remained separate from the community and was not maintained with community funds. Thus, at the time of sale it constituted petitioner's separate property under Louisiana law. See La. Civil Code art. 2334. Petitioner properly reported the full amount of the realized long-term capital gain on his 1978 return. [2] He also deducted the full amount of the long-term capital gain deduction *337 permitted under section 1202. However, he did not report the minimum tax imposed by section 56 with respect to the section 1202 tax preference item. See section 57(a)(9)(A). Respondent asserts that petitioner is liable for the full amount of the minimum tax as computed in the notice of deficiency. Petitioner's only argument to the contrary is that Congress did not intend for the minimum tax to be imposed in his situation, *338 where the real estate which generated the capital gain (and hence the section 1202 deduction) had been in his family for generations and had to be sold in order to pay debts and legal fees. Unfortunately, section 56 does not provide for the exception sought by petitioner; it simply states that the tax is imposed "with respect to the income of every person", and draws no distinction between tax preference items based on the events which gave rise to their availability. See Sullivan v. Commissioner,76 T.C. 1156, 1158 (1981), on appeal (10th Cir., Sept. 15, 1981); Short v. Commissioner,T.C. Memo. 1980-225. Therefore, we hold that petitioner is liable for the full amount of the minimum tax arising from the section 1202 deduction availed of for 1978. Issue 2. Depreciation; Investment Credit; Charitable Contributions
During 1978 petitioner was engaged in the private practice of law. On his return he reported total depreciation and investment credits with respect to assets used in his law practice in the amounts of $2,522 and $1,963.06, respectively. *339 However, he actually deducted or claimed only one-half of these amounts because the business was a community business under Louisiana law. For this reason, he also reported only one-half of the income derived from the law practice. [3] Respondent did not challenge the treatment of these items in his notice of deficiency. However, at trial petitioner argued that he was entitled to claim the full amount of the depreciation and investment credits because the related assets were allegedly purchased with his separate funds. Even if we were to assume that petitioner's allegation regarding the source of these funds is correct, he would still not be entitled to claim more than one-half of the available tax benefits. Petitioner has conceded that the income from his law practice was community income, and this Court has held that deductions properly chargeable against community income must be split between each spouse. see Stewart v. Commissioner,35 B.T.A. 406, 410-411 (1937), *340 affd. 95 F.2d 821 (5th Cir. 1938); Sanders v. Commissioner,21 T.C. 1012, 1018 (1954), affd. 225 F.2d 629 (10th Cir. 1955); Johnson v. Commissioner,72 T.C. 340, 347 (1979). This is true even where the deductions are paid out of one spouse's separate property. The rationale for this rule is that the community income which is allocated between the spouses is not gross but net taxable income, computed by deducting expenses incidental to its production. Stewart v. Commissioner,supra at 410. Accordingly, we hold that petitioner may not deduct any depreciation or claim any investment tax credit in excess of the amounts previously allowed. The resolution of the charitable contributions issue does not necessarily follow suit, however, because those deductions are not allocable to any particular class of income. In this instance, the source of the funds determines who is entitled to the deductions. See Clemens v. Commissioner,8 T.C. 121 (1947); Stewart v. Commissioner,supra at 411. *341 In his 1978 return petitioner claimed a deduction for cash charitable contributions in the amount of $4,854.50. On brief he argues that he erroneously reported only one-half of the total contributions he made during 1978, and that he is entitled to an additional deduction of $4,854.50 because all of the contributions were paid out of his separate checking account. To the contrary, respondent argues that petitioner is not entitled to any deduction in excess of the amount originally claimed because he has failed to prove that the source of the contributions was separate, as opposed to community, property. We disagree. Petitioner testified that he deposited the proceeds of the sale of his real estate in checking account number XX2-873 at the First National Bank of Denham Springs. He also introduced five checks drawn on that account totaling $7,700 and payable to three different churches, all of which respondent concedes qualify as charitable contributions under section 170. The first check, dated October 1, 1978, appears to be a temporary check drawn on a newly-opened account. It bears a pencilled-in notation which reads "Jerry L. Finley--Separate," and a number has been written *342 in the right-hand corner of the check for identification purposes. The other four are permanent checks on which petitioner's name, address, and the words "Separate Account" have been preprinted. They are also prenumbered (nos 103-105 and no. 120) and are dated October 22, October 23, October 24, and December 7, 1978, respectively. Judging from these checks and the testimony received at trial, it appears to us that petitioner opened a separate checking account shortly after the first two sales of real estate and deposited the sales proceeds in that account. There is no indication that these separate funds were commingled with any community funds. Thus, we think the evidence adequately substantiates petitioner's contention that the contributions were paid with his separate funds, notwithstanding his failure to produce the deposit slips and bank statements depicting the activity in account number XX2-873 during the time of the events in question. Accordingly, we hold that petitioner is entitled to deduct the full amount of the substantiated charitable contributions, or $7,700, in lieu of the amount previously deducted. Issue 3. Property Appraisal Fee
Petitioner also introduced *343 at trial a check drawn on account number XX2-873 for $250 which was payable to the firm of Medley, Graham & Wilkes. The check is dated October 2, 1978, and bears the notation "appraisal consultation". Petitioner testified that the payment was for an appraisal made in connection with the sale of his real estate, and that he did not deduct the amount on his return as either an itemized deduction or as an offset to the selling price in computing his capital gain. We hold for petitioner on this issue. After examining his 1978 return it does not appear that the fee was previously claimed as an offset to the sales proceeds reported on Schedule D (Capital Gains and Losses) of the return. Nor does it appear to have been deducted elsewhere on the return. We think the fee represents a bona fide expense of sale and that it should be taken into account in computing his recognized capital gains for 1978. Issue 4. Legal Fees
Petitioner contends that he is entitled to deduct legal fees in the amount of $10,552 which were paid in 1978 but omitted from his return. According to petitioner, these legal expenses were incurred in defending lawsuits brought by various suppliers of June's *344 Apparel and Gar-Dar, which were Louisiana-based businesses operated by petitioner's wife. He testified that he omitted these deductions from his return on the erroneous advice of his accountant. To support his claim, petitioner introduced two letters from an attorney, John R. Rarick, which state that Mr. Rarick received from petitioner three checks totaling $10,000, plus a payment for court costs in the amount of $552, during the last four months of 1978. The payments all related to legal services performed by Mr. Rarick in connection with the above mentioned lawsuits. One of the letters states that the lawsuits were filed by creditors against "community businesses run and operated by Mrs. June Finley." Petitioner has produced copies of the cancelled checks to document these payments. On this record, we are satisfied that these are legitimate business deductions relating to community businesses, and we hold that he is entitled to one-half of the community deduction of $10,552 in computing his 1978 income tax liability. Issue 5. Denial of Due Process
At trial petitioner argued that his constitutional right of due process was violated because he was issued a notice of *345 deficiency prior to an administrative appeal before the Internal revenue Service. He contends that he was harmed by this action because it prevented him from filing a joint income tax return, which he claims would have lessened his income tax liability. In our view, however, petitioner has lost his right to claim the benefits of a joint return and there has been no infringement of his constitutional rights. Section 6013 governs the filing of joint returns. It provides in part: (b) JOINT RETURN AFTER FILING SEPARATE RETURN.-- (1) IN GENERAL.--Except as provided in paragraph (2), if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year. * * * (2) LIMITATIONS FOR MAKING OF ELECTION.--The election provided for in paragraph (1) may not be made-- (c) after there has been mailed to either spouse, with respect to such *346 taxable year, a notice of defiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213; * * * Under this statute an effective joint return may not be filed after a notice of deficiency has been mailed to either spouse and a timely petition has been filed with this Court. Jacobson v. Commissioner,73 T.C. 610, 614-615 (1979); Kirby v. Commissioner,35 T.C. 306, 311 (1960); Avison v. Commissioner,T.C. Memo. 1981-21. Since petitioner did not file a joint return with his spouse before filing his petition herein, section 6013(b)(2)(C) bars him from doing so now. Respondent's alleged failure to provide an administrative appeal prior to the issuance of a notice of deficiency does not constitute a denial of due process. There is no mandatory requirement that respondent provide an appeals conference prior to issuance of the deficiency notice. The procedural rules governing the actions of the Internal Revenue Service do not have the force of law. Luhring v. Glotzbach,304 F.2d 560 (4th Cir. 1962); *347 Cataldo v. Commissioner,60 T.C. 522 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974). Moreover, the alleged failure to provide petitioner with an administrative appeal does not affect the validity of the notice of deficiency or the allocation of the burden of proof. Cleveland Trust Co. v. United States,421 F.2d 475, 482 (6th Cir. 1970); Cataldo v. Commissioner,supra.The trial in this Court is a proceeding de novo and is not based on any previous record developed at the administrative level. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 328 (1974). We conclude, therefore, that petitioner's procedural due process rights were not violated by the issuance of a notice of deficiency without a prior administrative appeal. See also Bothke v. Commissioner,T.C. Memo. 1980-1, affd. by order 667 F.2d 1030 (9th Cir. 1981). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated.↩
2. Under Louisiana law ordinary appreciation in the value of separate property, whether it occurs before or during the marriage, inures to the owner of the property, not the community. La. Civil Code art. 2408; Abraham v. Abraham,230 La. 78, 87 So.2d 735 (1956); Deliberto v. Deliberto,400 So.2d 1096 (La. App. 1981). Thus, the owner is taxed on the full amount of the gain when the property is sold. See Fleming v. Commissioner,4 T.C. 168 (1944), affd. 153 F.2d 361 (5th Cir. 1946); O'Connor v. Commissioner,40 B.T.A. 489 (1939), affd. 110 F.2d 652↩ (5th Cir. 1940).
3. For a discussion of the taxation of community income earned by a Louisiana couple, see United States v. Mitchell,403 U.S. 190↩ (1971).