331 So.2d 592 (1976)
Mrs. Ruby Yvonne H. OGDEN
v.
John Randolph OGDEN.
No. 10667.
Court of Appeal of Louisiana, First Circuit.
April 12, 1976.
Rehearing Denied May 24, 1976.
*593 Fred H. Belcher, Jr., Baton Rouge, for appellant.
Ashton L. Stewart, Baton Rouge, for appellee.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
LOTTINGER, Judge.
Plaintiff, Mrs. Ruby Yvonne H. Ogden, filed this suit on May 8, 1968, against defendant, John Randolph Ogden, for a partition of a dissolved community. The parties were married on December 26, 1956, and lived in Baton Rouge. Mrs. Ogden filed a suit for a separation of bed and board on April 14, 1966, on which a judgment was rendered on June 7, 1966. The parties were divorced on August 24, 1967. This suit seeks an accounting of the community affairs from Mr. Ogden, an inventory of its assets, and a partition thereof.
After trial on January 15 and 17, 1969, the District Court entered written reasons on the issues presented to it dated May 20, 1970.
On April 4, 1975, Mrs. Ogden (then remarried to Kelleher) filed a rule against defendant to complete the partition. A final judgment was signed by the District Court encompassing its reasons for judgment of May 20, 1970, and its rulings on the issues on the above rule, which was tried on May 19, 1975. As is shown by the evidence, the parties have partitioned the immovable property. The final judgment made an accounting of money and granted Mrs. Ogden a judgment against Mr. Ogden for $10,730.00, with legal interest from date of the separation. This judgment ordered a partition in kind of various shares of stock and household furniture. The judgment also recognized the parties as *594 owners in indivision of various promissory notes. Both parties have appealed.
There are five areas in which one or the other of the parties is not satisfied with the ruling of the Trial Court, and we will discuss them in the following order.
I. Mrs. Ogden contends that the Trial Court improperly allowed Mr. Ogden a claim for $10,461.09 which the Trial Court found to be his separate property as his one-sixth interest in the net worth of Gordon Theatre at the time of his marriage to Mrs. Ogden.
II. Mr. Ogden submits that the District Court erred in classifying 250 shares of stock of Broadmoor Theatres, Inc. in his name as community property.
III. Likewise Mr. Ogden claims that the Trial Court erred in classifying 127 shares of stock of Gordon C. Ogden Theatre, Inc. in his name as community property.
IV. Mr. Ogden contends that the Trial Court erred in classifying the money paid to him at the end of the years 1966, 1967 and 1968 by Broadmoor Theatres, Inc. as dividends instead of as compensation for work actually done.
V. Mrs. Ogden complained that the Trial Court incorrectly allowed Mr. Ogden a claim for $6,689.94 which was the amount of a down payment he made on real property known as Rittiner Terrace duplex.
Defendant inherited from his father an undivided one-sixth interest in a motion picture enterprise known as the Gordon Theatre at 412 North Fourth Street in Baton Rouge. Defendant's father and mother originally owned the theatre business, and he and his two brothers inherited his father's undivided one-half interest in undivided thirds.
Though defendant was a minor at the time of his father's death, the Gordon Theatre continued to be operated in the same manner it had always been even though no Court authority was obtained to do so with regard to the share of the minor children. After the death of defendant's father, the theatre business had one bank account in the name of Gordon C. Ogden Partnership, and it filed a partnership return for federal income tax purposes. Defendant argues that the business is a partnership, whereas plaintiff argues it to be a joint venture. Since the question of whether Gordon Theatre was a partnership is common to a number of the questions before us, we will consider that question at this time.
Darden v. Cox, 240 La. 310, 123 So.2d 68, 71 (1960), rehearing denied (1960), sets out the requirements for a partnership, to-wit:
"First, the parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill or industry, furnished to the business in determined proportions by them. Arts. 2801, 2805 of the Civil Code; Labat v. Labat, 232 La. 627, 95 So.2d 129. Secondly, all parties must share in the losses as well as the profits of the venure. Art. 2814 of the Civil Code; Amacker v. Kent, 144 La. 545, 80 So. 717. Thirdly, the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest. Art. 2808 of the Civil Code; Belden v. Read & Hunt, 27 La.Ann. 103; Chaffraix & Agard v. Lafitte & Co., 30 La.Ann. 631; Shushan Bros. & Co. v. Drennan & Hillcoat, 158 La. 480, 104 So. 214."
Mrs. Ogden argues that the Gordon Theatre business could not have been a partnership because Mr. Ogden, the defendant, was a minor at the time of his father's death and could not give the necessary consent for the formation of a partnership. While the partnership was a relative *595 nullity up to the time of Mr. Ogden's marriage to plaintiff, the marriage emancipated him. LSA-C.C. art. 379.[1] Following emancipation, Mr. Ogden's failure to object to the partnership and his participation therein was a tacit ratification of the partnership. LSA-C.C. art. 1785.[2] The second and third requisites of a partnership have also been met. Therefore, the Gordon Theatre business was a partnership which the partners named Gordon C. Ogden Partnership. Further, it appears to us that even though in his written reasons for judgment, the Trial Judge does not declare the Gordon Theatre business as a partnership, he treated it as such because he only allowed the community the enhanced value. Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (1956).

I.
Mrs. Ogden contends that the Trial Court improperly allowed defendant his claim for $10,461.09 which was his undivided one-sixth interest in the net worth of the Gordon Theatre business known as Gordon C. Ogden Partnership at the time of his marriage to Mrs. Ogden. There is no question that $10,461.09 is the correct net worth, but Mrs. Ogden argues that the majority of this net worth was in the form of cash in the Gordon Theatre bank account in the name of Gordon C. Ogden Partnership. She argues that income from Mr. Ogden's separate property was community property which is correct, but she further argues that as partnership income was commingled with cash on deposit at the date of marriage the commingling caused defendant's interest in the account to be considered community property under our jurisprudence.
We do not agree. The Gordon Theatre business was a partnership, and as such it is a separate legal entity. The defendant, Mr. Ogden, owns only an undivided interest in the partnership. He has no interest in the assets of the partnership other than his interest. All of the income deposited in the partnership account belonged to the partnership, and not to the partners in undivided interests. Dubuisson v. Moseley, 232 So.2d 870 (La.App.3rd Cir.1970).
The only claim that the community can have against this partnership is for the enhanced value of the interest, owned by the defendant since he married. LSA-C.C. art. 2408[3] and Abraham v. Abraham, supra.
*596 We, therefore, find no error in the Trial Judge allowing the defendant his claim for $10,461.09, representing his one-sixth of the net worth in the Gordon Theatre business on the date of the marriage of plaintiff and defendant.

II.
Mr. Ogden submits that the District Court erred in classifying 250 shares of stock of Broadmoor Theatres, Inc. in his name as community property.
Broadmoor Theatres, Inc. was formed by the Ogden family during the marriage of plaintiff to defendant. Defendant obtained his original forty shares of stock in Broadmoor Theatres, Inc. by check drawn upon the Gordon C. Ogden Partnership in the amount of $400.00 by the partnership bookkeeper and debited to defendant's drawing account, which check was used as payment in full for stock issued in the name of defendant. Ten of these original shares were later transferred to defendant's brother who was a minor at the time the corporation was formed.
The Trial Judge made the following comment with regard to the purchase by defendant of the stock in Broadmoor Theatres, Inc.:
"It is clear to this Court from an examination of the evidence that defendant has failed to overcome the presumption that the original Broadmoor stock acquired during the existence of the community is community property. The argument that the profits from the alleged partnership though reflected on defendant's capital account or net worth account belong to the partnership rather than to defendant is a non sequitur once funds from the capital account have been withdrawn by the defendant. All earnings of the defendant from whatever source or method constitute an asset of the community, Louisiana Civil Code Article 2334, and it is clear that the earnings from the alleged partnership attributable and belonging to the defendant during the existence of the community constituted community assets. Inasmuch as these annual earnings were commingled with the original separate funds, it is simply impossible to say on the basis of the evidence whether the $400.00 allegedly withdrawn from this account to purchase the original Broadmoor stock constituted an expenditure from the separate or community funds. Defendant enjoyed full dispositive power over this capital account, and to say that the $400.00 he withdrew to satisfy his stock subscription came from his separate funds rather than from the community funds would necessitate resort to sheer speculation."
Defendant argues that the Gordon Theatre business was a partnership and as such a legal entity and that none of the income belonged to him until it was actually paid to him. He further argues that the $400.00 was not income, was from his partnership account, and was an exchange of separate property for the stock which became separate property.
We agree that none of the partnership income belonged to the defendant until it was actually paid to him, Dubuisson v. Moseley, supra, but whether or not the income to the partnership is separate or community property, the income that the defendant receives from the partnership is community property. LSA-C.C. art. 2402 [4] *597 and Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (1952).
Of course, the defendant argues that the $400.00 was not income to him from the partnership, but merely a transfer of money in his partnership capital account to Broadmoor Theatres, Inc. for stock. This argument might hold true if the stock had been placed in the name of the partnership, for then it would simply be nothing more than another asset of the partnership; however, the stock in Broadmoor Theatres, Inc. was issued in the name of the defendant. Whether the check from the partnership was issued to the defendant in his name, deposited by him, and a new check issued to Broadmoor Theatres, Inc. for the purchase of the stock, or whether the check was issued in the defendant's name and endorsed by him to Broadmoor Theatres, Inc., or written directly to Broadmoor Theatres, Inc. on his behalf is of no moment, because under any of these circumstances the defendant was receiving income from the partnership, either directly or indirectly. Since the money that was used to purchase the stock is community, the stock is community.
There is the additional question as to whether 220 shares of Broadmoor Theatres, Inc. stock issued to defendant after the legal separation was community or separate property. At first, it would certainly appear that this would be his separate property; however, the Trial Court found the shares to be community property because the charter of Broadmoor Theatres, Inc. gives shareholders pre-emptive rights. At the time this second certificate for 220 shares was issued, a few months after the separation judgment, defendant was still in full and complete control of the community property. He had a fiduciary relationship to his wife. Pitre v. Pitre, 247 La. 594, 172 So.2d 693 (1965). To hold otherwise would not only violate the rights of the dissolved community to its pre-emptive rights, both in the charter of the corporation and in the law, but would violate the fiduciary relationship which defendant then had to his wife from whom he was separated. Defendant, if he had not so purchased for the community, would still have owed his wife full disclosure of the opportunity provided by the pre-emptive rights to buy such stock for the community, which he did not do. We agree with the Trial Court that this second issue of stock, though purchased after the effective date of the legal separation, was still community property.

III.
Mr. Ogden argues that the Trial Court erred in classifying 127 shares of stock in Gordon C. Ogden Theatre, Inc. as community property. Like the stock of Broadmoor Theatres, Inc. this stock was purchased with a check written on the account of Gordon C. Ogden Partnership which was the account of the Gordon Theatre business. For reasons already discussed we find that the Trial Judge was correct in finding this stock to be community property.

IV.
Mr. Ogden contends that the Trial Court erred in classifying monies paid to him at the end of the years 1966, 1967, and 1968 by Broadmoor Theatres, Inc. as dividends instead of as compensation for work actually done. Corporate resolutions authorizing said payments designate them as salaries, and they were so treated on the tax returns of the corporation. However, with only one exception, which we will mention later, all of these lump sum payments were made to officer-director-shareholders of the corporation. The Trial *598 Court points out that not all of the recipients of the payments lived in the Baton Rouge area, and all had already received compensation for their services as officers and directors in accordance with resolutions of the corporation. Additionally, for the year 1966, each of the four shareholders received the same amount at the end of the year, that is the sum of $7,500.00. For the year 1967, defendant and his brother, Gordon Ogden, Jr., received $11,850.00, their brother Guy received $9,150.00, and their mother received $8,170.00. In the year 1968 the shareholders each received $6,500.00 with the exception of defendant who received nothing. However, at the identical time, an employee of the corporation who is now the wife of defendant received $6,500.00. It was apparently obvious to the Trial Judge that she was paid in place of defendant for the specific purpose of avoiding the claim that is now made by plaintiff. The fact that these payments are in fact dividends rather than compensation is more evident when considered in light of the evidence that the division was made each year and changed each year so that the approximate sum of $25,000.00 was reported as corporate income each year. The year end divisions had no apparent relationship to work performed but were according to the ownership of stock.
The Trial Court found that the payments were dividends and as such belonged to the owner of the stock rather than being compensation due defendant. This Court will not disturb this factual finding of the Trial Court because "[T]here is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding . . ." Canter v. Koehring Company, La., 283 So.2d 716 (1973), rehearing denied (1973).

V.
Mrs. Ogden complains that the Trial Court incorrectly allowed defendant a claim of $6,689.94 which was the amount of a down payment he made on real property known as Rittiner Terrace duplex during the marriage. The opinion of the Trial Court sets out the basis of this dispute:
"A further point of disagreement between the parties involves the validity of plaintiff's written acknowledgment that the down payment made on a piece of property bought during the existence of the community came from defendant's separate funds and that the community is indebted to defendant in that amount. The record shows that on August 24, 1967 the litigants, in the presence of and with the advice of their respective counsel, executed a cash sale whereby defendant conveyed to plaintiff his undivided one-half interest in and to immovable property referred to as Rittiner Terrace duplex. (Defendant Exhibit 3) At the same time plaintiff signed the following letter:
`I hereby acknowledge that the cash payment in the amount of $6,689.94 in the purchase on July 6, 1957, of Lot 41 Rittiner Terrace, was your separate property and that the late community between us owes you that much money.' (Defendant Exhibit 2)
"Plaintiff takes the position, however, that despite her execution of this acknowledgement and the consummation of the aforementioned sale, she is not bound thereby and defendant, in order to claim this credit, must prove that he used separate funds in the indicated amount as down payment for this property. Defendant, on the contrary, contends that plaintiff is estopped to repudiate her acknowledgment."
The Trial Court, with the ability to observe the witnesses and judge their credibility, found that plaintiff had knowingly and with the advice of counsel, acknowledged this down payment as her husband's separate property. The Trial Judge held *599 plaintiff was estopped to now repudiate the acknowledgment. It so held, relying on the theory of detrimental reliance of Mr. Ogden and the fact that, a mere six months into marriage defendant could easily have had separate funds to use for this purpose. The Trial Court relied on Lieberdorfer v. Gayle, 217 So.2d 37 (La.App. 3rd Cir. 1968), writ refused, 253 La. 623, 218 So.2d 901, cert. den., 396 U.S. 863, 90 S.Ct. 137, 24 L.Ed.2d 116. There, the Court held that where the evidence failed to establish that the ex-husband fraudulently induced his ex-wife to sign a community property settlement that recognized stock as separate property of the ex-husband, the wife would be estopped from attacking her acknowledgment. This record contains no evidence of fraud. This Court will not disturb this factual finding of the Trial Court. Canter v. Koehring Company, supra.
For the above and foregoing reasons, the judgment of the Trial Court is affirmed. All costs of this appeal are to be paid equally by the parties.
AFFIRMED.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
PER CURIAM:
It has been brought to the Court's attention that a misinterpretation of the facts as stated in the original opinion have occurred wherein we stated that: "After the death of defendant's father, the theatre business had one bank account in the name of Gordon C. Ogden Partnership, and it filed a partnership return for federal income tax purposes." We did not intend to imply that the Gordon C. Ogden Partnership account and the partnership federal income tax return were filed after the death of the defendant's father and prior to the defendant's marriage. From the entire record, we are convinced that the theatre business was operated as a partnership between the time of the divorce of the defendant's father and mother and the marriage of the defendant on December 26, 1956. The subsequent maintenance of the Gordon C. Ogden Partnership account and the filing of the partnership federal income tax return are merely additional indications of the intentions of the defendant, his mother and brothers, to operate the business as a partnership.
Therefore, the rehearing applied for is refused, and for the foregoing reasons the original opinion is affirmed.
NOTES
[1] LSA-C.C. art. 379 provides:

"The minor, whether male or female, is emancipated of right by marriage."
[2] LSA-C.C. art. 1785 provides:

"Minors emancipated may contract in the cases already provided by law, and when not emancipated, their contracts are valid, if made with the intervention of their tutors, and with the assent of a family meeting, in the cases where by law it is required.
"When the minor has no tutor or one neglects to supply him with necessaries for his support or education, a contract or quasi contract for providing him with what is necessary for those purposes, is valid.
"A minor is also capable of accepting the contract of mandate, under the restrictions and modifications contained in the title on that subject.
"His stipulations in a marriage contract, if made with the consent of those whose authority is in such case required by law, are also valid.
"The obligation arising from an offense or quasi offense, is also binding on the minor.
"In all other cases, the minor is incapacitated from contracting, but his contracts may be rendered valid by ratification, either expressed or implied, in the manner and on the terms stated in this title under the head: Of nullity or Rescission of Agreements."
[3] LSA-C.C. art. 2408 provides:

"When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade."
[4] LSA-C.C. art. 2402 provides:

"This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; `provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.'"