361 So.2d 1271 (1978)
Gloria Ann GUILOTT, Plaintiff and Appellee,
v.
Clyde B. GUILOTT, Defendant and Appellant.
No. 6494.
Court of Appeal of Louisiana, Third Circuit.
June 14, 1978.
Writ Refused September 1, 1978.
*1273 Camp, Carmouche, Palmer, Carwile & Barsh, Karl E. Boellert, Lake Charles, for defendant and appellant.
Victor A. Sachse, Baton Rouge, W. Ellis Bond, Lake Charles, for plaintiff and appellee.
Before CULPEPPER, DOMENGEAUX, WATSON, GUIDRY and FORET, JJ.
CULPEPPER, Judge.
This is a suit to partition the community of acquets and gains formerly existing between the plaintiff and the defendant. The plaintiff wife also seeks the restitution of her paraphernal property and the fruits thereof. When the case was previously before us, 326 So.2d 551 (3rd Cir. 1976), we held as a matter of law that the wife was not entitled to restitution of the fruits of her paraphernal property, which fruits consisted mostly of earnings from her 5% interest in a partnership. We remanded the case for a new trial on all other issues.
When the case was retried, counsel for both parties agreed at the outset that the stipulation entered into during the first trial as to the commingling of the wife's separate funds with community funds, which stipulation this court found to be ambiguous, must be disregarded. Thus, the trial was conducted and the case decided as if that stipulation had never been made.
At the new trial, further evidence was introduced to identify what was community property and what was the separate paraphernal property of the wife. But the central issue was to determine whether the earnings attributable to the wife's 5% interest in the partnership, but not distributed in cash by the partnership to the wife, should be classified as paraphernal property, to which the wife is entitled to restitution, or as fruits, to which she is not entitled to restitution. On this central issue, the district judge held that only the earnings of the partnership which were actually distributed to her in cash were "fruits" of the wife's paraphernal interest in the partnership. The court held that the earnings which were not distributed and remained in the wife's partnership drawing account were not fruits. Also, the court held that certain "in kind" distributions of corporate stock and municipal bonds to the wife were not fruits.
The defendant husband has appealed, urging three specifications of error: (1) The trial court erred in declaring only the cash distributions or revenues of a paraphernal, limited partnership interest to be community property and in classifying the non-cash revenues as paraphernal property. (2) The trial court erred in accepting the wife's uncorroborated testimony that checks drawn by a partnership in which she had an interest constituted donations of cash as her paraphernal property, in view of the legal presumption that all property acquired during the marriage is community property. (3) The trial court erred in ordering the restitution by the husband of funds received by the wife and never delivered to the husband.

PARTNERSHIP EARNINGS
In his written reasons for judgment, the trial judge correctly finds that during the years 1957 through 1969 Mrs. Guilott received cash distributions from the partnership totaling $122,787.59. The judge held these must be considered fruits which were community property and are not subject to restitution. However, the district court held that the remaining distributions by the partnership to the wife were not "fruits", but, instead, were the increase or enhancement in value of the wife's interest in the partnership, and therefore remained her separate and paraphernal property and did not fall into the community.
*1274 Briefly, the pertinent facts are that in 1956 the wife's father, Mr. Robert Barber, donated to her a 5% interest in a partnership known as Barber Bros. Company, a large construction firm. Mrs. Guilott was an in commendam partner. In December of 1959, the general partners decided to form a new corporation named Barber Bros. Contracting Company, Inc. The new corporation was capitalized with $92,000 of partnership cash assets debited to the drawing account of each partner in proportion to his interest in the partnership. Mrs. Guilott received 50 shares of the capital stock ($100 par value) of the corporation in return for $5,000 debited to her partnership drawing account. Also in 1959 the partnership acquired 1,500 shares of this stock in return for the transfer to the corporation of certain equipment. In 1967 the partnership transferred these 1,500 shares to the partners on the basis of three shares for each share already owned, so Mrs. Guilott received 150 shares, making her total 200 shares. In 1969 the partnership again transferred shares of the stock to the partners, and Mrs. Guilott received 300 shares with a book value of $7,500. Mrs. Guilott's drawing account in the partnership was debited $7,500 in June of 1969 to pay for these 300 shares. The net result is that Mrs. Guilott received a total of 500 shares of the capital stock of the Barber Bros. Contracting Company, Inc. 350 shares were paid for by debiting her partnership drawing account, the same account from which she drew $122,787.59 in cash over the years 1957 through 1969. The remaining 150 shares were transferred to her by the partnership in 1967 as her portion of the 1,500 shares which were received by the partnership in 1959 in consideration of the transfer by the partnership to the corporation of certain equipment.
In January of 1969, Mrs. Guilott sold to the corporation her 500 shares of stock for a total consideration of $156,242.75, of which $39,060.94 was paid in cash, and the balance was represented by a note for the principal sum of $117,182.81, bearing interest at the rate of 4% per annum, and payable in three annual installments of $39,064.94 each.
The evidence does not show what happened to all of the cash realized from the sale of this stock. Mrs. Guilott testified some of it was deposited in a trust account at the Lakeside National Bank in Lake Charles, designated as the "C. E. Guilott Personal Trust". This trust was created on February 9, 1971, and was executed by both plaintiff and defendant in authentic form. It was funded with an initial cash contribution of $60,000. In this agreement the parties considered the proceeds of the stock sale to be community property, because the trust instrument expressly declares: "The property originally placed in trust is community property of the community of acquets and gains existing between the settlors and it shall retain that character." The testimony also shows that an additional $84,656.58 was deposited during the life of the trust. Although the exact origin of these additional funds is not clear from the evidence, the wife testified they came from the stock sale. It is noteworthy that the trust instrument also contains the following language: "If any property is later delivered to the trustee to be held under this act, the settlor delivering it shall identify it either as separate property of that settlor or as community property." There is no evidence offered that any identification as community or separate property was ever made as to these later deposits.
In his written reasons, the trial judge gave the following rationale for holding that only the cash distributions by the partnership to the wife were fruits which fell into the community:
"The initial interest in the partnership was plaintiff's separate property, having been donated to her by her father. The value of this partnership interest increased, yet the increase or enhancement was not due to any labor, industry or expense whatsoever of either plaintiff or defendant. It follows, therefore, that any increase or enhancement thereof cannot be claimed for the community. Abraham v. Abraham, 230 La. 78, 87 So.2d 735; Daigre v. Daigre, 228 La. 682, 83 So.2d 900, C.C. 2408.

*1275 "When the corporation was formed, the $5,000.00 which was used to purchase stock in the name of plaintiff was not at that moment community property, nor did its conversion into 50 shares of the corporation stock cause these shares to become community property. If the money had been paid in cash to plaintiff, it would have become community property, but it was not. It was simply the conversion of separate property from one form to another. See Kittredge v. Grau, 159 La. 154, 103 So. 723, and Succession of Hollier, 247 La. 384, 171 So.2d 656 (on rehearing). Under the holdings of these cases, these 50 shares became the separate property of Mrs. Guilott.
"The same reasoning with the same result is applicable to the 300 shares received by Mrs. Guilott from the conversion of partnership assets into stock of the corporation.
"Plaintiff also received an additional 150 shares of stock in the corporation when a stock dividend increased her 50 shares to 200 shares. These additional 150 shares also became her separate property. A stock dividend is not a dividend as the word is used in C.C. 2386, and does not fall into the conjugal partnership. Daigre v. Daigre, 228 La. 682, 83 So.2d 900.
"Thus, the entirety of the 500 shares at the time of their sale to the corporation was the separate property of Mrs. Guilott, and their sale did not in itself result in the proceeds thereof becoming community property."
With all due respect to the district judge, we cannot agree with the above holding. The record shows that the partnership maintained a capital account, also referred to as a "net worth account", which was owned by each partner in proportion to his respective interest in the partnership. There is no dispute that when the partnership was finally liquidated in 1970, as discussed hereinafter, Mrs. Guilott's share of the capital account of the partnership was $50,000.
The partnership also maintained a drawing account for each partner. Each year each partner's share of the earnings of the partnership was placed in his respective drawing account from which he could draw at any time.
It is our opinion that all partnership earnings transferred by the partnership into Mrs. Guilott's personal drawing account were the fruits of her paraphernal interest in the partnership and became community assets when transferred to her drawing account. LSA-C.C. Article 2386 expressly provides that "The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone." Of course, in the present case the wife did not declare by a written instrument that she reserved the fruits of her paraphernal property or that she intended to administer the property separately and alone. In our original decision in this case, we decided that, in the absence of such a written instrument by the wife, all of the fruits and revenues of her paraphernal property fall into the community.
The trial judge was apparently of the view that even though the wife filed no written instrument, the earnings from the wife's interest in the partnership did not fall into the community because these earnings were not due to any "labor, industry or expense whatsoever of either the plaintiff or the defendant." We cannot agree. Article 2386 expressly states that "The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, dividends and rents, . . . fall into the conjugal partnership." Under the trial judge's rationale, it would clearly be inconsistent to hold that the cash distributions to the wife fell into the community *1276 but the other partnership earnings which were placed in her drawing account did not. For it is clear that neither the cash distributions nor the money placed in the wife's drawing account were due to any labor, industry or expense of the husband or the wife.
The cases cited by the trial judge in his above quoted written reasons are distinguished because in those cases the court held under LSA-C.C. Article 2408 the increase in the value of the capital inures to the benefit of the separate estate. In the present case, it is conceded by the defendant husband that the increase in the capital value of the wife's interest in the partnership inures to her separate estate. The cases cited by the district judge do not hold that fruits of paraphernal property inure to the benefit of the separate estate of the wife.
The case of Ogden v. Ogden, 331 So.2d 592 (La.App. 1st Cir. 1976), writ of certiorari denied, 337 So.2d 523 (La.), for the reason "There is no error of law in the judgment", is very similar to the present one. In Ogden, the husband owned, as his separate property, a one-sixth interest in a partnership. A corporation was organized and the husband received 40 shares of stock paid for by debiting his drawing account in the partnership. The court held that the earnings of the partnership credited to the drawing account of the husband became community property, and the stock acquired with these earnings also became community property. The plaintiff wife in the present case concedes that the Ogden case is against her.
During oral argument, counsel for the plaintiff wife made an additional argument that since she was only a partner in commendam, she had no voice in the management of the partnership and, therefore, the earnings from her interest in the partnership did not fall into the community. Essentially, this is the same rationale used by the trial judge, although he did not mention that the wife was a partner in commendam. For the reasons stated above, we reject this contention. It is our view that regardless of whether the wife or the husband had any voice in the management of the partnership, the earnings from the paraphernal interest in the partnership fell into the community.
Counsel for the plaintiff wife also argues that the funds placed in the wife's drawing account remained under the control of the partnership until withdrawn by her, and hence that the undrawn funds never became community property. We also reject this contention. The evidence shows clearly that periodically the earnings of the partnership were distributed to the drawing accounts of the respective partners in proportion to their interest. Each partner could withdrew from his drawing account as he desired. This is corroborated by the fact that Mrs. Guilott actually did withdraw a total of $122,787.59 over the years 1957 through 1969. There is no evidence that she needed the consent of the partnership or any of the partners to make these withdrawals. It is apparent that she could withdraw at her discretion from this account.
Having concluded that all partnership earnings placed in the drawing account of Mrs. Guilott were fruits of her paraphernal property which fell into the community, it follows that when the corporation was organized in 1959, and $5,000 was debited to Mrs. Guilott's drawing account in the partnership to pay for her 50 shares of stock in the corporation, this stock became community property. Also, when Mrs. Guilott acquired 300 shares from the partnership in 1969, these were paid for by debiting Mrs. Guilott's drawing account and hence became property of the community. Thus, 350 of the 500 shares of stock in Barber Bros. Contracting Company, Inc. were paid for with funds debited to Mrs. Guilott's drawing account, and these 350 shares were owned by the community.
We will now discuss the 150 shares which were transferred to Mrs. Guilott by the partnership in 1967. These 150 shares were not paid for by debiting Mrs. Guilott's drawing account. They were a portion of the 1500 shares acquired by the partnership from the corporation in 1959 in consideration *1277 of the transfer by the partnership to the corporation of certain equipment. The 150 shares received from the partnership by Mrs. Guilott in 1967 represented her proportionate share of the 1500 shares, based on her interest in the partnership.
The equipment transferred by the partnership to the corporation for the 1,500 shares was capital of the partnership. Thus, the 1,500 shares became capital of the partnership. When these 1,500 shares were distributed by the partnership to the partners in proportion to their respective interests in the partnership, this constituted a distribution of capital assets of the partnership, as distinguished from fruits or earnings. The 150 shares of stock received by Mrs. Guilott did not change from capital to fruits. Thus, the 150 shares were separate and paraphernal capital of the wife. In Kittredge v. Grau, 158 La. 154, 103 So.2d 723 (1925) and State ex rel. Waterman v. J. S. Waterman & Company, Inc., 178 La. 340, 151 So. 422 (1933), the court held that the mere change of separate and paraphernal property from one form to another does not change the ownership from the separate estate to the community.
When the 500 shares owned by Mrs. Guilott were purchased by the corporation in 1969 for the sum of $156,242, 350 of these shares were owned by the community and 150 shares were owned by Mrs. Guilott's separate estate. The price per share was $312.48, so the price of the 350 shares owned by the community was $109,370 and the price of the 150 shares owned by Mrs. Guilott's separate estate was $46,872.
In the trial judge's written reasons, he referred to the 150 shares received by Mrs. Guilott in 1967 as a "stock dividend". He then cited Daigre v. Daigre, 228 La. 682, 83 So.2d 900 (1955) for the rule that a stock dividend is not a fruit of paraphernal stock. It is our view that the Daigre case has no application here, because this was not a stock dividend by the corporation.
In his brief, counsel for Mr. Guilott states that Mrs. Guilott acquired the 150 shares in a "stock split". This is also erroneous. This was not a stock split by the corporation. It was a distribution by the partnership to the partners of shares of stock which the partnership owned as part of its capital assets.
When the partnership was finally liquidated in June of 1970, the records of the partnership showed that Mrs. Guilott's interest in the capital account was valued at $50,000, and she had a balance of $57,066 in her drawing account. Together with interest on the funds in her drawing account, she was entitled to a total of $108,564. This amount was distributed to her in the form of four municipal bonds valued at $69,064 and cash in the sum of $39,500. The defendant husband concedes that the sum of $50,000 representing Mrs. Guilott's interest in the capital account is her separate property. However, he contends that her undrawn profits and interest, amounting to $58,564, which sum was paid to her in the form of the municipal bonds, are fruits and fall into the community. The record shows that Mrs. Guilott retained the municipal bonds and later sold them and retained the proceeds.
The district judge held that these municipal bonds delivered to Mrs. Guilott were not fruits of her paraphernal interest in the partnership because they were not cash. We cannot agree. It is our view that whether the earnings from Mrs. Guilott's paraphernal interest in the partnership were paid in cash or in kind is immaterial. That portion of the value of the bonds representing funds due her from her drawing account was community property.
It is noteworthy that during the trial the defendant husband sought to introduce the income tax returns showing that the community, not Mrs. Guilott individually, paid income taxes on all of the earnings of the partnership attributable to the 5% paraphernal interest of Mrs. Guilott, regardless of whether these earnings were withdrawn from Mrs. Guilott's drawing account or not. The trial court sustained an objection that this was irrelevant to a determination of whether the earnings were fruits, but the defendant put the tax returns in the record under an offer of proof. The fact that the *1278 community assumed the tax burden for these earnings is consistent with our decision that all of the earnings placed in Mrs. Guilott's drawing account became community property.

FUNDS APPLIED TO THE CONSTRUCTION OF THE FAMILY HOME
The defendant husband's second specification of error is that the trial court erred in accepting the wife's uncorroborated testimony that certain checks drawn by the partnership constituted donations to her and were her separate paraphernal property. This assignment of error concerns the total sum of $57,785.98 which the trial judge found was donated to Mrs. Guilott by her father during the years 1961 and 1962 for the construction of a family home. The defendant admits that $12,000 of this sum was represented by two checks from the father's personal account and were donations to plaintiff. However, defendant contends that the remainder of these funds to build the home were represented by checks drawn on the partnership and came from Mrs. Guilott's drawing account, which, as we have already held, was community property. The plaintiff wife contends these checks represented the donation by the partnership to her of funds for the construction of the home. On the face of it, we think it is highly suspect that all of the other partners would donate to Mrs. Guilott funds to build her home.
These partnership checks were issued to Mrs. Guilott, and the evidence shows that during 1961 and 1962 her drawing account was debited for $28,000 on one occasion and $30,925 on another occasion. Of course, the plaintiff wife has the burden of proving by clear evidence that the funds used to build the house were donated to her and were her separate property for which she is entitled to restitution. The only evidence to support her, in addition to the two checks totaling $12,000 from her father's own account, is her own testimony that the partnership intended to donate these funds to her to build the house. We find this is not sufficient to overcome the strong presumption that the funds in dispute came from her partnership drawing account and were community funds.

RESTITUTION OF WIFE'S SEPARATE CAPITAL
The husband's third specification of error is that the trial court erred in ordering the restitution by the husband of funds which were never delivered by the wife to the husband's control. The husband concedes that the wife is entitled to restitution of the sum of $12,000 donated to her by her father and used for the construction of the community home. This is clearly correct under the rules that even commingled and nontraceable paraphernal funds are subject to restitution where they were used to enhance the value of community property. See Succession of Bell, 194 La. 274, 193 So. 645 (1939), Succession of Videau, 197 So.2d 655 (La.App. 4th Cir. 1967), Succession of Russo, 246 So.2d 26 (La.App. 4th Cir. 1971), and the other cases cited in our original opinion in the present case, 326 So.2d 551.
The husband contended in his original brief that the $50,000 received by Mrs. Guilott when the partnership was liquidated in 1970, representing her interest in the capital of the partnership, was never delivered to him or to the community, and, therefore, never benefited the community. Furthermore, the husband argues that even if some of the wife's paraphernal capital was delivered to the community, it was so commingled with large sums of community funds that it cannot be identified nor traced.
In his supplemental brief filed in this court, the husband appears to soften his position regarding the $50,000 of capital assets of the partnership received by the wife in 1969. He concedes that the wife is entitled to this $50,000 as well as the $12,000 donated to the wife by her father and used in the construction of the community home. Thus, the husband concedes the wife is entitled to restitution of $62,000.
Of course, the husband does not concede that any portion of the funds received from the sale of the 500 shares of stock was the separate property of the wife, because the *1279 husband contends that all 500 shares were owned by the community. However, as set forth above, we conclude that 350 shares were owned by the community and the other 150 shares were owned by the separate estate of the wife. The price received for the 150 shares, at $312.48 per share was $46,872.
We now consider the law regarding restitution of the wife's separate capital. Our jurisprudence construing LSA-C.C. Article 2391 has established the rule that, both during the marriage and after its dissolution, the wife, unlike the husband, has the absolute right to restitution of her paraphernal capital, either delivered to her husband or delivered for use to the community, except in instances governed by Civil Code Article 2389, which is not applicable here. And, the wife has this right of restitution of her separate capital regardless of whether the separate funds have been commingled with community funds. Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 (1958); Broyles v. Broyles, 215 So.2d 526 (La.App. 1st Cir. 1968); Emerson v. Emerson, 322 So.2d 347 (La.App. 2d Cir. 1975). Although the author of the article in 31 Louisiana Law Review 252 is of the opinion that LSA-C.C. Article 2391 is applicable only during the marriage, the above cases have held to the contrary.
For the reasons stated above, we find that not only the $50,000 received by the wife in 1970 but also the sum of $46,872 representing the sale price of the 150 shares of stock which were her separate property, were the separate capital of Mrs. Guilott. Furthermore, the wife satisfied her burden of proving that these funds were delivered to the husband or to the community for the use and benefit of the community. She testified that these funds, as well as the funds which represented the fruits, were delivered to her husband for use by the community. Of course, portions of these funds were eventually placed in the trust account at the Lakeside National Bank, and the funds initially deposited in this trust are expressly designated as community funds. The trial judge held as a fact that all of these funds were delivered to the husband and used for the benefit of the community. The evidence amply supports this finding. Therefore, the wife is entitled to restitution of her separate capital.

CONCLUSION
The judgment appealed orders the defendant husband to make restitution to the plaintiff wife of the following:
"1. $39,500.00 received in liquidation of the partnership
Barber Bros. Contractors
2. $39,060.94 received as a portion of the sale price of the stock of Barber Bros, to the Corporation
3. The principal of the note for $117,182.81 received in three annual installments of $39,060.94 each being a portion of the sale price of the shares of stock of Barber Bros. Corporation; and
4. $57,785.98 representing a gift from Robert Barber to his daughter, Ann Barber Guilott in 1961 and 1962.
Total ...................... $253,529.73
Restitution is limited to the extent these amounts may be satisfied out of the community assets."
For the reasons stated above, the judgment appealed must be amended to reduce the amount which defendant is ordered to make restitution to plaintiff from the sum of $253,529.73 to the sum of $108,872, itemized as follows:
(1) $12,000 donated to Mrs. Guilott by her father in 1961-62 and used to build the community home
(2) $50,000 received by Mrs. Guilott in 1970 as her share of the capital of the liquidated partnership
(3) $46,872 received by Mrs. Guilott in 1969 as the price of the 150 shares of stock which were her separate property.
As to defendant's contention that the fair market value of the municipal bonds ($69,064) should be included in the inventory of the community and debited to the account of the plaintiff wife, we have held that the value of the municipal bonds did fall into the community to the extent that this value represented the remaining balance in the drawing account of Mrs. Guilott, which was *1280 delivered to her on liquidation of the partnership. As stated above, there was a balance of $58,564 in Mrs. Guilott's drawing account at the time the partnership was terminated. We conclude that this amount should be included in the inventory of the community and debited to the account of the plaintiff wife, and that the judgment should be amended accordingly.
For the reasons assigned, the judgment appealed is amended to reduce the amount which the defendant husband is ordered to make restitution to the plaintiff from the sum of $253,529.73 to the sum of $108,872. The judgment is further amended to add to the community existing between the parties at the time of its dissolution the sum of $58,564, representing that portion of the value of the municipal bonds delivered by the partnership to Mrs. Guilott in payment of the remaining balance in her drawing account when the partnership was liquidated. The judgment is further amended to debit the account of Mrs. Guilott with the said sum of $58,564 represented by the municipal bonds. Otherwise, the judgment appealed is affirmed. All costs of the trial court, as well as the costs of this appeal, are assessed to the parties in the proportion of one-half to each.
AFFIRMED, AS AMENDED.
DOMENGEAUX, J., dissents and will assign reasons.
DOMENGEAUX, Judge, dissenting.
I continue to subscribe to my comments concerning the case of Slater v. Culpepper, and Code Articles 2386 and 2391, and the other matters discussed in my concurring and dissenting opinion commencing at page 560 of 326 So.2d. These matters are still viable as shown by the writ refusal by our Supreme Court, wherein it was stated that the rights of all parties on all issues in this litigation are reserved. 330 So.2d 316.
In the original case, the District Judge ordered restitution by the husband of the entire amount of the wife's separate funds and fruits therefrom in the sum of $461,061.99, in addition to certain tax payments and insurance premiums paid by the wife. After reviewing the original record and this one on remand, I would conclude that the amounts ordered restituted are correct.
Overall, it is my impression that the facts of this case are akin to and controlled by the case of Kittredge v. Grau, 158 La. 154, 103 So. 723 (1925). See also State ex rel. Waterman v. J. S. Waterman & Company, 178 La. 340, 151 So. 422 (1933); Succession of Hollier, 247 La. 384, 171 So.2d 656 (On rehearing) (1965); Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (1956); Daigre v. Daigre, 228 La. 682, 83 So.2d 900 (1955).
Should I be in error in concluding that the trial court was correct in its original judgment, then in that event I would subscribe to its judgment on remand which ordered the sum of $253,529.73 restituted by the husband.