WILLIAMS, Judge.
This appeal arises out of a judgment partitioning a community property regime with a retroactive dissolution date of March 22, 1979.[1]
*32 The trial court found Mrs. Turner’s claim, that a certificate of deposit in the sum of $110,000.00 was purchased with funds inherited by her and hence her separate property, is without merit as the inherited funds were commingled with other community funds and expended for the benefit of the community. The court also found the community owed Mr. Turner $24,122.87 for maintenance of the community home and payments of community and Mrs. Turner’s individual debts. Mrs. Turner brought this appeal asserting the trial court erred in finding the community indebted to Mr. Turner in the sum of $24,-122.87 due to lack of proof and in concluding the $110,000.00 certificate of deposit is a community asset as her presently identifiable separate property did not lose its “separate nature” merely because it was commingled with community funds. We reverse in part, affirm in part and render. FACTS
Emile L. Turner, Jr. and Helen G. Turner were married on August 29, 1959 and, following Mr. Turner’s petition for divorce filed on March 22, 1979, the parties were divorced on January 10,1980. Mrs. Turner filed a petition to partition the community on May 18, 1981 and on April 4, 1985 judgment was entered declaring the assets and liabilities of the community and their respective values. On December 8, 1986, the trial court entered a judgment formally partitioning the community. It is from that judgment Mrs. Turner appeals.
During their marriage, Mrs. Turner re-' ceived distributions from the Mary Gumble Trust, a trust established for the benefit of Mrs. Turner and her siblings by her grandmother. From 1968 until the dissolution of the community, Mrs. Turner allegedly received trust disbursement checks totalling $168,000.00. The record indicates Mr. Turner’s acknowledgement of the existence of the trust and of the disbursements being Mrs. Turner’s separate property. He also testified that when Mrs. Turner received the trust disbursements, she would endorse the checks and turn them over to him for investment and for the general support of the family. Mr. Turner, however, testified he would not verify that Mrs. Turner received $168,000.00 from the trust as she claimed, but he was willing to concede that in the last few years of their marriage, Mrs. Turner did deliver to him trust disbursement checks totalling $75,000.00.[2]
One of the investments Mr. Turner made during the community was a certificate of deposit in the amount of $110,000.00. During their separation, Mrs. Turner cashed this certificate of deposit and transferred the funds to Texas banks allegedly in violation of the injunction brought by Mr. Turner which prohibited either party from concealing, disposing of, or alienating community assets. Despite Mrs. Turner’s averment that the certificate of deposit represents an investment of her trust disbursements, the trial court determined the instrument is a community asset for which Mrs. Turner has not, as yet, accounted. MERITS
A. Restitution of the Wife’s Paraphernal Effects
Mrs. Turner asserts the trial court erred in determining the sum of $110,000.00 plus interest, which represents the certificate of deposit which Mrs. Turner cashed and transferred to Texas banks, is a community asset. She claims the certificate of deposit was purchased with funds originating as disbursements from her grandmother’s *33 trust and merely because these separate funds were commingled with other community funds, the separate nature of her property has not been destroyed as it is presently identifiable in the form of the certificate of deposit. The trial court’s reasons for judgment declared Mrs. Turner’s claim is without merit because any separate funds she might have had became community funds when commingled with other community funds and expended for the benefit of the community. For reasons not considered by the trial court, we disagree.
The separate property of a spouse is his or hers exclusively and includes property acquired individually by inheritance or donation. LSA-C.C. art. 2341; former LSA-C.C. art. 2334 (repealed Act of 1979, No. 709). Property acquired during the marriage, however, is presumed part of the community. LSA-C.C. art. 2402 (repealed Act of 1979, No. 709); LSA-C.C. Art. 2340 (effective January 1, 1980); Compton v. Compton, 371 So.2d 313, 315 (La.App. 2d Cir.1979), writ, den., 374 So.2d 657 (La.1979). But that community presumption may be rebutted by showing the property was acquired during the marriage with separate funds, or by inheritance or donation to one of the spouses. Compton v. Compton, 371 So.2d at 315.
Under our Civil Code’s pre-1980 matrimonial regime provisions pertaining to the restitution of the wife’s separate capital,[3] both during the marriage and after its dissolution, the wife had an absolute right to the restitution of her paraphernal effects (separate property) and its fruits which had either been delivered to her husband or delivered for use to the community.[4] Conversely, the husband had only a limited right of restitution as it was incumbent upon him to establish his separate property had been employed to enhance the community at its dissolution. Slater v. Culpepper, 233 La. 1071, 99 So.2d 348, 360 (1957); Lane v. Lane 375 So.2d 660, 674 (La.App. 4th Cir.1978); writ den., 381 So. 2d 1222 (La.1980); Guilott v. Guilott, 361 So.2d 1271, 1278 (La.App. 3d Cir.1978), writ den., 363 So.2d 68 (La.1978).
The wife was entitled to restitution of her separate capital regardless of whether the separate funds had been commingled with community funds. Guilott v. Guilott, 361 So.2d 1271, 1278 (La.App. 3d Cir.1978), writ den., 363 So.2d 68 (La.1978) [even the wife’s commingled non-traceable parapher-nal funds are subject to restitution when used to enhance the value of community property]; Slater v. Culpepper, supra; Broyles v. Broyles, 215 So.2d 526 (La.App. 1st Cir.1968); Emerson v. Emerson, 322 So.2d 347 (La.App. 2d Cir.1975).[5] To obtain restitution of the paraphernal capital delivered to the husband, the wife had only to prove her separate property, or its proceeds, was delivered to her husband and was used for his benefit or for the benefit of the community. Succession of Slavich, 232 So.2d 846, 849 (La.App. 4th Cir.1970), writ den., 256 La. 255, 236 So.2d 32 (1970); Connell v. Connell, 316 So.2d 421, 431 (La.App. 3d Cir.1975), amended, 331 So.2d 4 (La.1976); Lane v. Lane, 375 So.2d 660, 675 (La.App. 4th Cir.1978), writ den., 381 So.2d 1222 (La.1980); Foster v. Foster, 330 So.2d 638, 639 (La.App. 4th Cir.1976). She did not have to prove the value of the community had been enhanced by the expenditure of the funds, Succession of Sla-vich, supra; Lane v. Lane, supra; *34 Broyles v. Broyles, 215 So.2d 526 (La.App. 1st Cir.1968), because the wife’s delivery of her paraphernal property to her husband effectively made her a creditor of the community and made her claim a community debt. Foster v. Foster, 330 So.2d at 639.
Mrs. Turner’s burden of proving her right to the restitution of the value of her separate property is twofold. She must first prove the existence of separate funds and then prove the funds were either delivered to Mr. Turner or expended for the benefit of the community. Former LSA C.C. Arts. 2390, 2391 (repealed, Act of 1979, Section 709); Slater v. Culpepper, supra; Succession of Slavich, supra; Connell v. Connell, supra. Through Mr. Turner’s admissions, Mrs. Turner sustained her burden of proving both elements, so as to establish her right of restitution from the community of her separate property in the amount of $75,000.00.
On cross-examination, Mr. Turner testified he was willing to concede Mrs. Turner received $75,000.00 from her grandmother’s trust.[6] This admission adequately fulfilled Mrs. Turner’s burden of proving the existence of her separate funds up to the amount of $75,000.00. The record, however, lacks physical evidence or other competent evidence of the existence of trust disbursements totalling $168,000.00 sufficient to support Mrs. Turner’s claim for the restitution of separate funds of that amount. Consequently, Mrs. Turner’s claim for restitution is limited to $75,000.00 plus interest.
Mr. Turner’s testimony also fulfilled Mrs. Turner’s burden as to her second element of proof when he testified it was Mrs. Turner’s custom to endorse and deliver to him the checks she received from the Mary Gumble trust since he was head and master of the community. Because Mrs. Turner delivered the endorsed trust disbursement checks to her husband, it is unnecessary for her to prove the funds were expended for the benefit of Mr. Turner or the community. Connell v. Connell, supra; Succession of Slavich, supra. Moreover, as the endorsed checks themselves were delivered to Mr. Turner, there is no question of commingling of separate and community funds prior to the delivery of the separate funds to the husband.[7]
As the wife’s right to restitution of her separate funds delivered to her husband was an absolute right under the community property laws in effect at the time of the dissolution of the Turners’ marriage and as the wife’s right of restitution could not be impaired by the husband’s act of commingling the wife’s separate funds with community funds, the trial court erred in finding Mrs. Turner’s claim for the restitution of her separate property is without merit. Accordingly, the trial court judgment is amended to reflect Mrs. Turner’s right to the restitution of her separate property in the amount of $75,000.00 plus interest. Thus, although Mrs. Turner must account to the community for the certificate of deposit in the amount of $110,000.00, plus interest, which she removed from the community during her separation from Mr. Turner, she stands as a creditor of the community for the restitution of her separate funds, in the amount of $75,000.00, plus interest.
B. The Husband’s Right to Reimbursement from the Community in the Sum of $24,122.87
The trial court found Mr. Turner is entitled to reimbursement from the community for certain community debts and personal debts of Mrs. Turner which he paid after the effective date of the termination of the community. Mrs. Turner seeks to have this finding of fact overturned because she claims the debts are not community debts as the sums were expended while Mr. Turner occupied the family home during their separation and were not expended for substantial repairs needed to preserve community assets. We disagree.
The principles governing appellate review of factual findings of the trier of fact are unequivocally set forth in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Our *35 review of the record, in light of those principles governing appellate review, reflects the trial judge did not clearly err when he determined the community is liable to Mr. Turner in the amount of $24,122.87 for sums he expended for maintenance and repair; of the community home and for payment of community and individual debts of Mrs. Turner. The evidence on record, reasonably evaluated for credibility, furnishes ample basis for this finding. Accordingly, the judgment of the trial court on this community liability is affirmed.
For the reasons assigned, the judgment of the trial court is reversed in part, affirmed in part and judgment is rendered. All costs of the trial court, as well as costs of this appeal, are assessed to the parties in the proportion of one-half each.
REVERSED IN PART; AFFIRMED IN PART; AND JUDGMENT RENDERED.
ON APPLICATION FOR REHEARING AND FOR CLARIFICATION OF JUDGMENT
In clarification of this court’s judgment of September 16, 1988, legal interest runs on the three claims resolved in that decision from December 8, 1986, the date the parties’ community was formally partitioned. Thus, Mrs. Turner must account to the community for the amount of $110,-000.00, plus legal interest running from December 8, 1986.

. Under LSA-C.C. art. 159, the parties’ divorce judgment granted on January 10, 1980 carried with it a retroactive dissolution of community to the date Mr. Turner filed for divorce, March 22, 1979. Accordingly, the applicable Civil Code provisions governing community property re *32 gimes are those repealed by Acts 1979, No. 709, effective January 1, 1980.

. MR. REED:
Q. How much are you willing to concede was received during the marriage in the form of checks turned over to you from Mrs. Turner and placed into the community account?
MR. TURNER:
A. I have no way of knowing.
MR. REED:
I would ask that the witness be instructed to answer the question and all I’m asking is how much are you willing to concede was placed in the account, was it twenty thousand or ten thousand or if you have another number give me that, I think that is a fair question.
MR. TURNER:
As head and master of the community—
THE COURT:
Mr. Turner, can you answer the question?
MR. TURNER:
Sure, I can, $75,000.00.

. LSA-C.C. art. 2391. The wife has, even during marriage, a right of action against her husband for the restitution of her paraphernal effects and their fruits, as above expressed, (repealed Act of 1979, No. 709; effective Jan. 1, 1980.)

. The wife’s right to restitution, under the community property laws in effect in 1979, was unqualified. Slater v. Culpepper, 233 La. 1071, 99 So.2d 348, 360 (1959). The exception to this rule is set forth in (former) C.C. art. 2389, and applied to instances when the wife reserved to herself the administration of her paraphernal property. Herein, the parties acknowledge that Mr. Turner managed both the wife’s parapher-nal property and the community.

.Contrast these cases to Paxton v. Bramlette, 228 So.2d 161 (La.App. 3d Cir.1969), writ den., 255 La. 241, 230 So.2d 92 (1970) and Downs v. Downs, 410 So.2d 793 (La.App. 3d Cir.1982), writ den., 414 So.2d 375 (La.1982), where the nature of the funds as community or separate property was the issue. In both cases the wife commingled paraphernal and community funds prior to delivering the funds to the husband.

. See footnote 2.

. See footnote 5.